HORACE J. ALLEN, Respondent, v. GEORGE W. SISSON
and Another, Appellants.

*Bills and notes — when commissioners signing them are personally liable — omission
of a statutory duty — a* quasi *corporation — implied powers — effect of a void
statute upon personal liability.*

A board of commissioners, appointed by chapter 90 of the Laws of 1869 to improve
the navigation of, and to maintain dams and reservoirs on, the Racket river, to
be known as "Commissioners for Improvements on the Racket River," were
required to make an estimate of the cost of their improvements, which amount
was to be collected from the property benefited, through a board of assessors,
who were also appointed by the act to impose assessments which the commis-
sioners were given power to collect.

Several assessments were laid, but were not wholly collected, nor did the com-
missioners attempt to collect, by law, those unpaid, nor did they call upon the
assessors to levy a further assessment, the statute giving to the commissioners
no express power to call upon the assessors to levy a further assessment.

This state of facts appeared upon the trial of an action brought by the assignee of
a note, which read as follows:

"$846.32.                                    Potsdam, *June* 24, 1882.

"One day after date, for value received, we, as Commissioners of Racket River
Reservoir, promise to pay to George Parker, or bearer, eight hundred and forty-
six and $\frac{32}{100}$ dollars, with interest.

| "*Commissioners of* | ⎰ HENRY WATKINS. |
| "*Racket River* | ⎱ GEO. W. SISSON. |
| "*Reservoir.* | ⎱ GEO. B. SWAN," |

Parker had performed services for the commissioners in relation to the improvement,
and had received the note therefor, which he had assigned to Horace J. Allen,
who sued the makers as individuals and recovered a judgment against them.

Upon an appeal by the defendants from this judgment in favor of Allen for the
amount due upon the note:

*Held,* that, notwithstanding the form of their signatures, which imported a per-
sonal liability, from the fact that they signed as " Commissioners of Racket
River Reservoir," instead of "Commissioners for Improvements on the Racket
River," it was doubtful whether the defendants were liable upon this ground.

That as Parker had been employed by them, as commissioners, for work to be done
under the act, and as they had intended to bind themselves only under the act,
the title used by them in signing the note was simply a misnomer.

That Parker had no means of collecting the note, except by an assessment made
under the act; that the commissioners had an implied power to cause such assess-
ment to be levied, and had failed to do so to Parker's damage.

That, although the act did not give them express power to cause an assessment to
be made, yet it gave them power to establish dams and reservoirs and to make

estimates, and it required the assessors to make an assessment before the work was done.

That these provisions gave the commissioners an implied power to lay the estimate before the assessors, and to require the latter to assess.

That they were personally liable for their failure as commissioners, to perform a duty, the neglect of which caused a direct injury to Parker and his assignee. (HERRICK, J., dubitans.)

That the act did not constitute the commissioners a corporation in the strict sense; that, at most, they were a *quasi* corporation, but, even as such, they were liable for an omission of duty.

That section 3 of chapter 432 of the Laws of 1872 did not repeal section 7 of chapter 90 of the Laws of 1869, but was only intended to give the assessors power to make separate assessments.

That as the act permitted the commissioners to use money collected under an assessment to pay any just claim, there was no force in the defense that no assessment had been laid to pay Parker's claim, and that he had no interest in the other assessments

That if, as the defendants claimed, the act of 1869 was unconstitutional, then the defendants were personally liable, because they never were commissioners, and in that viewhad, as individuals, employed Parker, and had not paid him.

APPEAL by the defendants, Henry Watkins and George W. Sissons, from a judgment of the Supreme Court, entered in the office of the clerk of the county of St. Lawrence on the 7th day of March, 1889, upon a recovery by the plaintiff of $1,186.55 damages and $143.80 costs, after a trial before the court at the St. Lawrence Circuit, a jury trial having been waived.

Henry Watkins, one of the original defendants, having died, the action was duly revived against Henry A. Watkins, as administrator of his estate.

*John A. Vance,* for the appellants.

*E. H. Neary,* for the respondent.

PUTNAM, J.:

This action is brought upon a note, of which the following is a copy:

"$846.32. POTSDAM, *June* 24, 1882.

" One day after date, for value received, we, as Commissioners of Racket River Reservoir, promise to pay to George Parker, or bearer, eight hundred and forty-six and $\frac{32}{100}$ dollars, with interest.

| " *Commissioners of* | HENRY WATKINS. |
| " *Racket River* | GEO. W. SISSON. |
| " *Reservoir.* | GEO. B. SWAN." |

Swan, one of the makers, having died, the survivors were made defendants. By chapter 90 of the Laws of 1869 a board of commissioners were appointed for the purpose of improving the navigation of the Racket river and the hydraulic power thereof, to be termed " Commissioners for Improvements on the Racket River." One George Parker performed services for said commissioners in improving the navigation of said river, and they executed the note in suit therefor. Said Parker transferred the note to plaintiff.

The commissioners by said act were empowered to make dams and establish and maintain reservoirs on Racket river, and they were required to make an estimate of and determine the probable cost of such improvements, and the expenses therefor were to be assessed and collected as provided in section 7 of the act. Section 7 provided for the appointment of a board of assessors who shall make a schedule and description of the several lots that should be assessed as provided in the act, and that they shall assess on the property benefited the sum of $5,000 the first year, and thereafter, from time to time, such sums as shall be necessary. After the assessments are completed the assessors shall certify the same, furnishing a detailed statement thereof to such commissioners. The act gives the latter the right of action to collect such assessments.

The court below found that seven assessments were made by the assessors under said act, from and including 1872 up to and including 1879, amounting, in all, to $42,000, and that some part of such assessments remain uncollected. That the commissioners had failed to take legal measures to effect such collection and had not ordered any new assessment since the giving of said note. That the assessors had been ready and willing at all times to make any necessary assessment when required to do so by the commissioners.

Defendants, having signed their proper names to the note in suit, are *prima facie* liable personally. (*Brockway* v. *Allen*, 17 Wend., 40.)

This is especially so in this case because it is provided in chapter 90 of the Laws of 1869, that the commissioners appointed thereunder shall be termed " Commissioners for Improvements on the Racket River," while in the note in suit defendants are designated as " Commissioners of Racket River Reservoir." They do not appear, therefore, to have executed the note as commissioners under the act in question.

I am not prepared to hold, however, it being shown by defendants that Parker was, in fact, employed by them *as commissioners*, under the act in question, in the performance of labor authorized by such act, and that the note was intended to be given by defendants therefor as such commissioners, but by mistake there was a misnomer of their title — that the defendants could ordinarily be held personally liable. (*Brockway* v. *Allen*, 17 Wend., 40; *Bank of Genesee* v. *Patchin Bank*, 19 N. Y. 315.)

The evidence in the case does show that Parker was employed by defendants, as commissioners, under the act in question, to perform labor authorized thereby, and hence it is doubtful if the defendants could be held personally liable unless they were guilty of negligence or misconduct, as found by the trial judge, in omitting to call upon the assessors under the act to make an assessment to pay the note in suit, and in failing to collect the assessments already made.

The law is well settled that public officers charged with a ministerial duty are answerable in damages to anyone specially injured by their neglect or omission to perform the duties of their offices. (*Piercy* v. *Averill*, 37 Hun, 366 and cases cited; *Bennett* v. *Whitney*, 94 N. Y., 302.)

I will assume that in the first instance defendants were not personally liable on the note, and only liable a commissioners. If they had any duty to perform in the way of calling on the assessors to make an assessment, or to collect assessments made, and failed to perform such duty, such failure was a direct injury to plaintiff or his assignor. He had no means of collecting his claim except by an assessment under the act. The defendants failing to cause such an assessment to be made, prevented the payment of his claim. Therefore, under the authorities cited, defendants, if bound to cause an assessment to be made, or to collect those already made, are, for the omission to do so, liable personally.

Defendants insist that said chapter 90 of the Laws of 1869 created a corporation, and the negligence, if any, shown in the case, was, therefore, a corporate negligence, and not that of defendants personally, and hence the defendants are not personally liable. (*Bassett* v. *Fish*, 75 N. Y., 303.)

I am unable to perceive that the act in question created a corporation properly so called, although it is possible that its effect was to

make the commissioners a *quasi* corporation, the same as supervisors, trustees of school districts, etc. (See 2 Kent, 278.)

The corporation referred to in the case of *Bassett* v. *Fish*, cited by defendants, was formed under chapter 555 of the Laws of 1864, and was a corporation propererly so called, and the distinction between such a corporation and a *quasi* corporation is clearly stated in that case. But if chapter 90, Laws of 1869, did create a *quasi* corporation the commissioners under the act in question are public officers, and liable for an omission to perform their duties under the act within *Piercy* v. *Averill* (*supra*), and kindred cases.

It is claimed by defendants that under chapter 90 (*supra*) they, as commissioners, had no right or power, and it was not their duty to cause an assessment to be made by the assessors. It is true the act does not, in terms, give them power to cause the making of an assessment, but it confers on them power to establish and maintain dams and reservoirs. It provides that they shall make an estimate of the probable cost of making said improvements and the board of assessors shall make an assessment therefor *before the work is done.* The board of commissioners, therefore, under the act, are authorized to construct, establish and maintain dams and reservoirs. I think that on making the estimate of the amount required to be assessed in any year to do the required work they had the power to lay such estimate before the board of assessors and to require the latter to make an assessment. In no other way could the assessors know the amount necessary. In no other way can the law be carried out. It is a well-settled principle that statutes containing grants of power must be construed so as to include the authority to do all things necessary to make the object of the grant effectual, and to enable the donor of the power to accomplish the express purposes of the act. (*Mayor, etc., of New York* v. *Sands*, 105 N. Y., 211; *People ex rel. Ostrander et al.* v. *Chapin*, 105 id., 309.)

Here the commissioners were authorized to erect and maintain dams and reservoirs. Before doing so they must estimate the expense and the assessors must assess the amount. Can it be doubted that the commissioners had the power to lay before the assessors their said estimate and call upon them to make an assessment? Such a right is necessary to make effectual the power conferred upon them to make and maintain reservoirs, and hence is

inferred. Having the power it will not be doubted it was the duty of the commissioners to ask for an assessment in order that they might carry out the work devolved upon them.

The court below was, therefore, justified in its conclusion, that defendants failing to require an assessment to pay the claim in suit were personally liable. I have examined section 3, chapter 432 of the Laws of 1872, to which our attention is called by counsel for defendants, and find some difficulty in construing it. I do not think, however, it was intended by said section to repeal section 7 of the original act. I am inclined to think it was intended by section 3 (*supra*) to give power to the assessors to make different and separate assessments when called upon to raise any sum under the act.

The court below also finds that defendants had failed to collect assessments made. I think the omission of defendants to so collect the same was a negligent act, injurious to plaintiff, and rendering them personally liable.

Counsel for defendants claim that it is not shown that any assessment was made to pay Parker's claim, and hence it does not appear that he had any interest in any assessments made. Under the act the commissioners had the right to receive and collect all assessments. They are not restricted as to the use of assessments collected. In other words money received by them *under any assessment* may be applied to the payment *of any just claim.* The assessments already made, if collected, could, under the act, be legally applied upon the note in suit. Hence the above position is not well taken.

Defendants also claim that the act in question was unconstitutional, and hence defendants were under no obligation to enforce its provisions. I do not deem it necessary to discuss the constitutionality of the law. If, in fact unconstitutional, undoubtedly defendants were not compelled to act under it. But they acted under the law and employed plaintiff's assignor, and having done so can they avoid paying him the value of the services, evidenced by the note in suit, on the ground that the statute in question is not constitutional?

It is held that an unconstitutional act is no law; it confers no rights; imposes no duties; affords no protection; it is as inoperative as if never passed. (*Norton* v. *Shelby County,* 118 U. S., 426.)

As we have seen, defendants employed Parker and gave him the

note in suit for the value of his services. That *prima facie* they are personally liable, although they signed the note as " Commissioners of Racket River Reservoir." But defendants contest the claim on the ground that they, in fact, executed the note for work done for them as " Commissioners for Improvements on the Racket River," under a law passed by the legislature of the State of New York. If the law is unconstitutional, as claimed, there was, in fact, no law. Defendants were not commissioners. They have no defense to the action. Having employed Parker and received the benefit of his labor, they must pay him.

There are other questions raised in the case I do not think it necessary to discuss.

The judgment should be affirmed, with costs.

MAYHAM, P. J., concurred.

HERRICK, J. (dissenting):

The defendants gave the note as public officers; it could only be paid by moneys raised by assessment; other officers over whom they had no control were to make such assessments. I am in doubt, under the case of *Tone* v. *Mayor* (70 N. Y., 157), whether it was their duty to compel such assessors to act, and whether a failure to compel them to act makes them guilty of negligence, and hence personally liable upon the note.

Judgment affirmed, with costs.