## Pullman Palace Car Co. v. John T. Connell.

1. NEGLIGENCE—*Assumed Hazard—Improper Use of Trap Doors.*— The court holds that no negligence on the part of appellant, as a basis of recovery in this case, can be predicated upon the mere existence or location of certain trap doors, nor upon the use of them in the manner in which they were customarily used in the course of business, and that as to such existence, location and use the doctrine of assumed hazard applies, but that the jury were warranted in finding that there was here a use which was not customary or usual in the course of the business, and in holding appellant liable for the results of such use.

2. SAME—*Failure to Look Where One is Stepping Not Necessarily Negligence.*—There is no absolute rule that a failure to look where one is stepping is negligence as a matter of law, and where, under the circumstances of a particular case, reasonable minds might reach different conclusions on that question, it must be submitted to the jury for determination.

3. PLEADING—*Defects Cured by Verdict.*—Where there is any defect, imperfection or omission in any pleading which would be fatal on demurrer, yet if the issue joined is such as to require, on the trial, proof of the facts so defectively stated or omitted, and without which it is not to be presumed that the judge would have directed or the jury have given the verdict, such defect, imperfection or omission is cured by the verdict.

**Trespass on the Case,** for personal injuries.   Appeal from the Circuit Court of Cook County; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at the October term, 1897.   Affirmed.   Opinion filed March 3, 1898.

### STATEMENT OF THE CASE.

This is an appeal from a judgment for a personal injury to appellee, occasioned by his stepping into an open hatchway in the floor of a blacksmith shop in which he was employed by appellant.   There was evidence showing, or

tending to show, that appellee had worked for appellant for many years; that he was familiar with the premises in question; that the hatchway in which he was injured was one of a row of six, which were located over a long box or tunnel covering machinery beneath the floor; that the top of this tunnel was about on a level with the floor, and was used as a passage way; that each of the six openings was covered by a lid, which worked upon hinges; that each hatchway was opened several times daily to oil the machinery beneath; that when opened for that purpose it remained open only a minute or two, and was occupied by the man oiling; that the floor of the shop was incumbered by piles of iron, castings, etc.; that the timekeeper said to appellee, "You will have to put a move on yourself, because I think that we will use some of them this afternoon," etc., and at the same time gave appellee a piece work slip; that appellee replied that he had no tongs, and was told by the timekeeper that Kennedy had them; that appellee then walked toward Kennedy's forge; that he could not go straight to it on account of the piles of iron, anvils, etc.; that he was in a hurry, but did not walk very fast; that he was looking straight at Kennedy, and as he got up to his forge, fell into the hatchway, which was open; that the hatchway was not opened and occupied by an oiler, but had been opened by a carpenter to repair, and remained open for an hour and a half; that the carpenter was under another department of appellant's employment; that there were at the time as many as fifty fires burning upon forges in the shop; that the light of the fires dazzled one's eyes as he went toward them; and that there was a great deal of smoke and gas in the shop.

There was a conflict of evidence upon the question of whether it had been usual and customary to leave the hatchways open, while no one was so occupying them as to prevent a person from falling into them. There was also a conflict of the evidence as to whether appellee was looking upward as he walked, or straight ahead.

FRANCIS B. DANIELS, attorney for appellant; JOHN S. RUNNELLS, of counsel.

Pullman Palace Car Co. v. Connell.

W. C. Asay and Robert Redfield, attorneys for appellee.

An argument of this case must necessarily be an argument in support of the court's ruling below in refusing to grant a new trial, and in that regard we desire to submit the following authorities: Kennedy Bros. v. Sullivan, 34 Ill. App. 46; Young v. Silkwood, 11 Ill. 36; Bush v. Kindred, 20 Ill. 93; Tolman v. Race, 36 Ill. 472; Indianapolis, B. & W. Ry. Co. v. Buckles, 21 Ill. App. 181; Indiana, B. & W. Ry. Co. v. Hinshaw, 21 Ill. App. 335; City of Chicago v. Garrison, 52 Ill. 516; Bloomer v. Denman, 12 Ill. 240.

And upon the question of submitting this case to the jury we maintain that a court can never be called on to say there is negligence as a matter of law, unless the conduct of the plaintiff was so palpably negligent that any reasonable mind would so pronounce it without hesitation. If there is room for difference of opinion the question is for the jury. Lake S. & M. S. Ry. Co. v. Johnsen, 135 Ill. 641; Chicago, M. & St. P. Ry. Co. v. Wilson, 35 Ill. App. 346; Lincoln Ice Co. v. Johnson, 37 Ill. App. 453; Chicago & A. R. R. Co. v. Fisher, 38 Ill. App. 33, 141 Ill. 614.

Whether there is contributory negligence on the part of the plaintiff is always a question for the jury. Pullman Palace Car Co. v. Laack, 143 Ill. 242; City of Chicago v. McLean, 133 Ill. 148; City of Chicago v. Moore, 139 Ill. 201.

Our Supreme Court has always held it to be a question of fact for the jury to determine whether or not the plaintiff on his part was exercising ordinary care. Lake S. & M. S. Ry. Co. v. Johnsen, 135 Ill. 641; City of Chicago v. Babcock, 143 Ill. 358; Chicago & A. R. R. Co. v. Rayburn, 52 Ill. App. 277; Cleveland, C., C. & St. L. Ry. Co. v. Monks, 52 Ill. App. 627.

Our courts have held that the question as to whether a structure was in substantially the same condition at two different times is a question of fact for the jury. City of Bloomington v. Legg, 48 Ill. App. 459.

The doctrine of the courts of this State seems to be that

the master is liable for an injury to his servant occasioned by temporary peril or where a special danger exists by reason of a peculiar and exceptional state of affairs. Lake S. & M. S. Ry. Co. v. O'Conner, 115 Ill. 254; Fairbank v. Haentzsche, 73 Ill. 236; Whalen v. I. & St. L. R. R. & C. Co., 16 Ill. App. 320; United States Rolling Stock Co. v. Wilder, 116 Ill. 100; Consolidated Ice Machine Co. v. Kiefer, 26 Ill. App. 466.

Our Supreme Court has also decided that it is for the jury to say whether a plaintiff ought to be charged with knowledge of a defect or danger or not. Chicago & N. W. Ry. Co. v. Jackson, 55 Ill. 492.

MR. JUSTICE SEARS DELIVERED THE OPINION OF THE COURT.

It is contended by appellant that the verdict is not supported by the evidence, because, first, the evidence discloses, it is claimed, that the injury resulted from an assumed hazard; and, second, it shows, it is claimed, that appellee was guilty of contributory negligence.

As to the contention that the injury to appellee resulted from an assumed risk, the brief of counsel for appellant is deserving of commendation for the exceedingly frank and candid manner in which it presents the evidence for the consideration of the court. A judicial statement of the substance of the evidence could not be more fair and impartial. We quote from the brief: "It had been the custom during the entire ten years that Connell had worked there, for the oiler to open these trap-doors as often as twice a day during working hours in order to oil the shafting below. When he did so the door would be thrown over flat on its back, toward the east. The oiler would then either stoop and oil from above, or he would get down into the tunnel, which was four or five feet deep, when his head would project above the hole. For such oiling the door would remain open perhaps a minute. There was evidence on behalf of defendant tending to show that sometimes the oiler went out of sight in the opened hole in order to oil bearings situated between holes, and that in such case a hole would remain open and

unguarded some four or five minutes, but there was a contest made upon this evidence, so that probably it should not be considered in connection with a request for a peremptory instruction."

From this evidence, thus fairly stated, it seems to us that the conclusion is inevitable that the verdict is sustained so far as the question of assumed hazard is concerned.   Upon the conflicting evidence the jury might find that it was not usual and customary in the business of appellant to leave these hatchways open and unoccupied, *i. e.*, unguarded.   All that is undisputed is that the hatchways were frequently opened and left uncovered while occupied by a workman, engaged in oiling the machinery—when, as one of the witnesses testified, it would be difficult to fall into without pushing the workman away.   As a result of this custom of the business, no risk could be said to have been assumed as to dangers arising from carelessly leaving the hatchway uncovered and unoccupied.

It is urged that it is a well-established rule that trapdoors, hoistways, and similar openings in floors, being a usual and necessary part of the equipment for business in most factories, the mere fact of their existence and use is no evidence of negligence, citing Kolb v. Sandwich Ent. Co., 36 Ill. App. 419.

It is true that no negligence of appellant as a basis of recovery here can be predicated upon the mere existence or location of these trap-doors, nor upon the use of them in the manner in which they were customarily used in the course of business.   For as to such existence, location and customary use, the doctrine of assumed hazard applies.   But the jury were warranted in finding, and, in effect, did find, that there was here a use which was not customary and usual in the course of the business, *i. e.*, the careless leaving of one of them open and unoccupied.   The United States R. S. Co. v. Wilder, 116 Ill. 100; Wharton on Neg., Sec. 206.

We come, then, to the question of contributory negligence on the part of appellee.   It is urged that the evidence dis-

closes that this uncovered hatchway was perfectly open to view and could and would have been seen by appellee had he been looking at his feet or his pathway.

As to whether a failure to look where one is stepping constitutes *per se* contributory negligence, the authorities may seem to differ. In many cases where the evidence disclosed simply that the plaintiff failed to look where he stepped, and thereby stepped into a place of danger and was injured, it has been held that such failure was negligence, and did preclude a recovery. Clark v. Murton, 63 Ill. App. 49; Village of Kewanee v. Depew, 80 Ill. 119; East St. L., I. & C. S. Co. v. Crow, 155 Ill. 74; Casey v. City of Malden, 40 N. E. Rep. 849 (Mass.); Harty v. Cromwell S. S. Co., 74 Fed. Rep. 748.

It is to be observed, however, that in these cases there were no facts relieving the plaintiff from his duty to look where he stepped, and thereby use some diligence to discover what lay before him. In other cases it has been held that a failure to so look at one's pathway does not necessarily preclude recovery, but must be submitted to the jury to determine whether such failure does constitute, in the given case, a lack of ordinary care. City of Chicago v. McLean, 133 Ill. 148; City of Chicago v. Moore, 139 Ill. 201; City of Chicago v. Babcock, 143 Ill. 358, and other cases.

In most of the cases so holding it will be found upon examination that there were facts which tended to relieve the plaintiff from the charge of negligence by reason of failure to keep an oversight of the pathway upon which he walked.

And it is seen, from an examination of all the cases, that it is after all the test of the possibility of reasonable minds differing upon the question of what conclusion should be drawn from the facts, which must govern. If there be no fact in evidence to relieve the plaintiff from being charged with negligence in failing to look out for his own safety, by seeing where he walked, it could hardly be said that reasonable minds could differ as to his negligence. But when such facts do appear as would warrant different conclusions in

reasonable minds in this behalf, it is for the jury to determine. There is no absolute rule that such failure to look will *per se* bar a recovery.

The facts here, which might operate to relieve appellee from such charge, are to be found in the evidence showing that he was hurried by the order of the timekeeper; that the smoke and glare of the furnaces would tend to obscure his sight, and that the piles of iron, anvils, etc., obliged him to pay some attention to them as obstructions in his way. Whether these facts were sufficiently established and operated to excuse appellee's failure to see the open hatchway was, we think, a question for the jury.

Appellant complains of the refusal of the trial court to give the second, third and fourth instructions proffered by it. The second and third tell the jury that certain facts would not establish negligence, and the giving of either instruction would be, in effect, to peremptorily direct the jury to find for the appellant. The third incorrectly directs that if it had been customary to open the trap doors in question several times a day, the risk was an assumed one, and no recovery could be had by plaintiff. It ignored any distinction between the opening of it for purposes and in a manner which involved no hazard, as was customary, and the unusual and careless opening of it as here alleged. There was no error in refusing these instructions.

The eighth and ninth instructions, given by the trial court of its own motion, are complained of, but mainly upon ground of objection which goes to the sufficiency of the plaintiff's case. This we have already considered and disposed of.

The seventh and eighth instructions, taken together, inform the jury, in substance, that plaintiff assumed the ordinary hazards attending the customary opening of the trap doors—whether plaintiff knew of such custom or not. We think appellant has no cause of complaint as to these instructions.

It is urged that the declaration is faulty and insufficient, in that it does not allege that by reason of defendant's neg-

ligence in leaving the hatchway uncovered the plaintiff fell therein. It does allege that defendant negligently left it uncovered, and that plaintiff fell into it.

In Keegan v. Kinnare, 123 Ill. 280, the rule here governing is thus stated: "When there is any defect, imperfection or omission in any pleading, whether in substance or form, which would have been a fatal objection upon demurrer, yet, if the issue joined be such as necessarily required on the trial proof of the facts so defectively or imperfectly stated or omitted, and without which it is not to be presumed the judge would direct the jury to give or the jury would have given the verdict, such defect, imperfection or omission is cured by the verdict." 1 Chitty's Pleading, (7th Am. Ed.), 711, 712, *712; Helmuth v. Bell, 150 Ill. 263.

It is assigned as error that the trial court sustained an objection to the following question: "How about whether it was generally known they (the hatchways) were open at different times during the day?" Irrespective of the form and propriety of the question, no harm could have resulted to appellant from its exclusion, for by the seventh instruction the court told the jury, at appellant's request, that the plaintiff assumed hazards incident to customary practice as to opening the hatchways, whether plaintiff knew of the custom or not. It is also complained that the court excluded answer to this question put to one Kennedy: "When you noticed him coming, what did he seem to be looking at?" There was no error in this ruling. The witness had already testified, "I did not notice what he was looking at." The same witness was permitted, over objection of appellant, to testify that the hatchway had been open for an hour and a half before the accident. We think that this evidence was properly admitted.

The testimony of the physicians, Gray and McLean, as to the probable effect of the injuries upon plaintiff's ability to work as a blacksmith, if improper, could only have affected the award of damages, and in no way the issue as to liability. There is no complaint that the verdict is excessive.

After careful examination of the whole record, we are satisfied that the judgment should be affirmed.