# Joseph Udwin v. John Spirkel.

## Gen. No. 13,479.

1. PEREMPTORY INSTRUCTION—*character of motion for.* A motion to take a case from the jury is in the nature of a demurrer to the evidence, and, except as to technical methods of procedure, is governed by the same rules. The maker of the motion so to instruct admits the truth of all opposing evidence, and all inferences which may be fairly and rationally drawn from it.

2. PEREMPTORY INSTRUCTION—*when should be refused.* A peremptory instruction should be refused if the evidence, with all the legitimate inferences which may be deduced from it, tends to support the plaintiff's case, and if the jury could without acting unreasonably in the eye of the law, decide in favor of the plaintiff.

3. CONTRIBUTORY NEGLIGENCE—*when use of defective sidewalk not.* It is not contributory negligence as a matter of law for a pedestrian to forget that there is a hole in a particular sidewalk, nor is it negligence *per se* to walk rapidly upon such a sidewalk, nor to fail to look at the sidewalk while walking thereon.

Action in case. Error to the Circuit Court of Cook County; the Hon. GEORGE A. CARPENTER, Judge, presiding. Heard in this court at the March term, 1907. Reversed and remanded. Opinion filed October 3, 1907.

ELIJAH N. ZOLINE, for plaintiff in error; FRANK H. LENNARDS, of counsel.

GOLDZIER, ROGERS & FROELICH, for defendant in error.

MR. JUSTICE ADAMS delivered the opinion of the court.

Plaintiff in error sued defendant in error in case for negligence. At the conclusion of the plaintiff's evidence the court, on the defendant's motion, peremptorily instructed the jury to find for the defendant, which the jury did, and judgment was rendered against the plaintiff for costs. The facts are few and simple and are substantially as follows:

The defendant is the owner and in control of the building known as number 293 West Twelfth street, in the city of Chicago, which is an apartment building consisting of six flats and a store on the ground floor. At the time of the ac-

cident hereinafter mentioned, the six flats were occupied by
six families. Plaintiff occupied the second flat as a tenant
of defendant from month to month, and had lived in the
premises four years. There is a small yard in the rear of
the building, and, at the rear end of the yard, there are
sheds which are used by the tenants of the building for
storing fuel and other property. These sheds were reached
by the tenants of the building by means of a board walk
eight or nine feet wide, which extended from the build-
ing to the sheds. The ground under this walk was excavated
to the depth of about six feet, and the space thus made was
used as a storage room. About a week or ten days before
July 1, 1901, at which last date the accident occurred, a
boy broke through one of the boards of the walk, leaving a
hole in it about two and one-half feet long by about one
foot wide, and about the middle of the walk and three feet
from the foot of the stairs leading down to the walk from
the building. The next day after this happened the plain-
tiff informed defendant of the hole, and told him that it
was dangerous. In the forenoon of July 1, 1901, L. Kol-
menowitz met plaintiff on Twelfth street, near the building
in question, and asked him if he had any boards of a cer-
tain kind, and plaintiff said he had, and then Kolmenowitz
went down the alley in the rear of the sheds and plaintiff
went on Twelfth street to his residence to get the key to his
shed. Plaintiff, the only witness to the actual occurrence of
the accident, testified: "On July 1, 1901, about 10 o'clock
in the forenoon, I was going to my shed in the rear of the
house to attend to some business, and, while passing over
the walk in the rear of the house, I stumbled over a nail or
some obstruction about the edge of the hole in the walk, and
I fell with my right foot and leg into the hole. My leg
went down clear up to about the hip. I had forgotten about
the hole in the walk, and was not thinking of it at the time
I fell. I had my mind on the man who was waiting for
me at the shed, and upon the business I was about to trans-
act. I did not see the hole. The sidewalk thereabout was
partly covered with paper. I do not know how the papers

got there. I only used the walk occasionally in the summer time, and I cannot recall that I passed over it or saw it between the time the hole was broken into the walk and the time I fell into it, about a week or ten days." He further testified that he was wedged in tight in the hole and had to call for help. On cross-examination he testified that there were two or three feet on each side of the hole where there was no paper and where one could have walked, and that he was in a hurry and walking fast, as the man was waiting for him at the shed. Kolmenowitz and Lewis Udwin, plaintiff's son, both testified that they heard plaintiff's call for help and went to his assistance and found him wedged in the hole, and lifted him out of it. Kolmenowitz testified that the hole, all around the edge of it, was covered with paper, pressed up tight to the sides, and Lewis Udwin testified that he looked at the place where plaintiff was lying, and found a lot of paper there on the walk, and paper pressed against the side of the hole where plaintiff's leg had been wedged in. The day was clear at the time of the accident. The evidence tends to prove that the plaintiff was seriously injured.

The specific ground on which the court took the case from the jury does not appear from the record; but counsel for the parties, respectively, agree that it was on the ground that plaintiff failed to prove that he was exercising ordinary care, at or about the time of the accident, and we think this must have been the ground of the court's action, as we think the evidence tends to prove negligence on the part of the defendant. Counsel for the defendant contend that the plaintiff was guilty of contributory negligence, in walking fast, and in not seeing and avoiding the hole in the walk.

A motion to take a case from the jury "is in the nature of a demurrer to the evidence, and, except as to technical methods of procedure, is governed by the same rules. The maker of the motion so to instruct admits the truth of all opposing evidence, and all inferences which may be fairly and rationally drawn from it. The motion does not involve a determination of the weight of the evidence, nor the

credibility of witnesses." Offutt v. World's Columbian Exposition, 175 Ill., 472, 474; Metropolitan El. Ry. Co. v. Fortin, 203 *ib.,* 454.

If the evidence, with all the legitimate inferences which may be deduced from it, tends to support the plaintiff's case, and if "the jury could without acting unreasonably in the eye of the law, decide in favor of the plaintiff" (Bartelott v. International Bank, 119 Ill., 259, 272), then the court was not warranted in taking the case from the jury. In Pullman Palace Car Co. v. Connell, 74 Ill. App., 447, we said, Mr. Justice Sears delivering the opinion: "And it is seen, from an examination of all the cases, that it is, after all, the test of the possibility of reasonable minds differing upon the question of what conclusion should be drawn from the facts, which must govern." *Ib.* 452. In order to sustain the taking of the case from the jury, we must hold that men of reasonable minds could arrive at but one reasonable conclusion from the evidence, namely, that the plaintiff did not exercise ordinary care, and that his failing so to do contributed to the injury. Now what are the salient facts bearing on the question whether the plaintiff exercised ordinary care? A week or ten days before the accident he informed defendant of the hole, and told him that it was dangerous, and defendant said he would fix it right away. The walk was made of boards and could have been repaired in a very short time, probably in less than half an hour, and plaintiff was warranted in believing that defendant would, as he said he would, fix it immediately, and, so believing, he probably dismissed the matter from his mind. Kolmenowitz testified: "The hole all around the edge was covered with paper pressed up tight to the sides," and Lewis Udwin testified that he found a lot of paper on the walk "and paper pressed against the side of the hole where my father's leg had been wedged in." We do not think it an unreasonable inference from this that the hole, before plaintiff fell in it, was, at least partly covered and hidden from view by the paper, and that plaintiff, in falling into it, pressed the overhanging paper against the edge of the hole.

In Simonds v. City of Baraboo, 93 Wis., 40, the plaintiff had noticed the defect in the highway a week before the time of his injury, by reason of the defect, and, for that reason, it was contended he could not recover, in respect to which the court said: "Notwithstanding the fact that the plaintiff had seen the defect about a week previous to the date of his injury, it being in a conspicuous place and of such a character that a very little time and expense were sufficient for its repair, he well might reasonably have assumed that the repairs had been made." *Ib.* 44.

In Bassett v. Fish, 75 N. Y., 303, the plaintiff, a school teacher, was injured by stepping into a hole in the floor of a recitation room, which was plainly in sight, and plaintiff had seen it three weeks before she was injured. The court say, among other things: "Even if the recollection of having seen the hole there that once, by any association of ideas, came back to her after three weeks, on the day of her hurt, she might, without fault, give that remembrance but little heed, for she might well suppose that repair had been made. And if she did not recollect, it was not plainly negligence to have forgotten it, for she might well unburden her mind of it, because of her right to rest upon the assumption that her employer would do its duty to her and to others, and make prompt repair, where repair was so needful." *Ib.* 307.

That the plaintiff forgot that there was a hole in the walk was not negligence as matter of law. This is established by numerous authorities and is admitted by defendant's counsel in their argument. Neither was it negligence *per se* for plaintiff to walk fast on the walk. In McCormick v. City of Monroe, 64 Mo. App., 197, 201, the court say: "The plaintiff, in walking along the sidewalk, had the right to assume that it was not in a dangerous condition, and, hence, the fact that she walked fast, or even that she ran, looking straight ahead, is not incompatible with the use of ordinary care on her part." On the hypothesis that plaintiff was not looking at the walk as he walked along it, this was not negligence *per se*. Chicago v. McLean, 133 Ill., 148; City of Chicago v. Babcock, 143 Ill., 358, 363.

Counsel for defendant cite Village of Kewanee v. Depew, 80 Ill., 119, in which the court use the following language: "Had he not known of the defect, he might, probably, have been justified in assuming that the sidewalk was safe, and in acting upon that hypothesis. Or if, knowing the defect, some present necessity had distracted his attention, he might be excusable in not recollecting; but a person, in the full possession of his faculties, passing over a sidewalk, in daylight, with no crowd to jostle or disturb him, no intervening obstacles to obscure approaching danger, and no suddenly occurring cause to distract his attention, is under obligation to use his eyes to direct his footsteps, and those who do not do so are negligent. Had appellee given a mere casual glance ahead of him, he must have seen the defect, and the slightest variation in his course would have avoided the danger."

Counsel quote that part of the language commencing with the words, "A person in the full possession of," etc., omitting all preceding those words.

In City of Chicago v. McLean, *supra,* the appellant, the city of Chicago, asked the trial court to give an instruction containing, in substance, the language of the court in Kewanee v. Depew, quoted by defendant's counsel, which the trial court refused to give, and it was contended that this was error. The Supreme Court say: "Some of the phraseology used in the fourth instruction was made use of by this court in Village of Kewanee v. Depew, 80 Ill., 119. That case was decided before it had become the law of this State that questions of fact, in actions of this kind, are settled by the judgment of the Appellate Court. Moreover, it appeared there, that the plaintiff had seen the defect in the sidewalk four or five days before he was injured and several times subsequently, and that, at the time of the injury, instead of looking at the hole in the sidewalk, of the existence of which he had knowledge, he was observing a passing buggy to satisfy his curiosity as to the style of harness on the horse."

We think it evident that the court was not satisfied with the language in Kewanee v. Depew, and one of the justices

dissented in that case.  It will be observed that the court said of the plaintiff in the Depew case: "Or, if knowing the defect, some present necessity had distracted his attention, he might be excusable in not recollecting." *Ib.*, 121.   The case is clearly distinguishable from this, in that the defendant here promised, a week or ten days before the accident, to repair the walk right away.   Counsel for defendant also cite and rely on Pullman Palace Car Co. v. Connell, 74 Ill. App., 447; City of E. St. Louis v. Donahue, 77 *ib.*, 574; City of Quincy v. Barker, 81 Ill., 300, and East St. Louis Ice. etc., Co. v. Crow, 155 *ib.*, 74.

The case at bar differs essentially in its facts from each of these cases, and we think the cases inapplicable.   Our conclusion is, that had the cause been submitted to the jury, the jury might have found from the evidence, "without acting unreasonably in the eye of the law," that the plaintiff exercised ordinary care in the premises, and, therefore, that the cause should have been submitted to the jury.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*