CARRIE A. BASSETT, Respondent, *v.* WILLIAM A. FISH et al.,          75   303
                    Appellants.                                      130   274

*It seems*, that as a general rule where an administrative officer acts con-
    trary to or neglects to act in accordance with his official duty, and
    another suffers injury in consequence, an action lies against the officer in
    behalf of the person so injured.
Such officer is also liable for the misconduct or negligence in the scope of
    their employment of those employed by or under him, voluntarily and pri-
    vately and who are paid by or responsible to him.
Under the provisions of the statute of 1864 relating to public instruction
    (title 9, chap. 555, Laws of 1864), which authorizes the formation of
    union free school districts, the board of education of such a district is
    created a body corporate, and the powers in terms given by the act to the
    board are given to the corporate body.
The corporation so created takes, not only the powers given expressly by
    the statute, but such other powers as are necessary to its life and well
    being, and which such entities have at common law or by other statutes;
    it must act also, and can act only, in the mode and by the means appro-
    priate to a corporation.
The difference between a corporation so created and the *quasi* corpora-
    tion composed of the trustees of an ordinary school district, pointed out.
For a neglect to perform a duty imposed upon such a corporation the
    members of the board are not individually liable; the neglect is that of
    the corporate body, not of the individuals composing it, and the liability
    rests upon it.
*It seems*, however, that where one of the members of the board has been
    duly charged by the corporation as its agent or servant, distinct from
    his relation as a corporator, with a duty the neglect of which brings
    damage to another, he is liable as an individual therefor.
This action was brought against all the members of such a board jointly as
    trustees, charging them as public officers, not as individuals, with neglect
    in not keeping the school-house in repair, in consequence whereof plain-
    tiff was injured. It appeared upon the trial, that the board had an
    arrangement with F., one of the defendants, that when any small repairs
    were needed he was to make them, whether upon order or notice first
    given, or upon his own motion did not distinctly appear, and it did not
    appear that the question of his individual liability distinct from that of
    the other defendants was presented to the trial court. The judgment
    was against all of the defendants jointly. *Held*, error; and that it could
    not be sustained against F.
Also *held*, that the complaint could not be amended by striking out the
    names of the defendants and inserting that of the corporation, as the cor-
    poration had not been brought into court, and the court had no jurisdic-
    tion of it, nor could the complaint be amended here by striking out the

names of all the defendants save F., and the designation of him as trustee; as it would be a complete change of the theory of the action.

*It seems,* that a motion for amendment should properly be made in the court below at Special Term.

The negligence complained of was the omission to repair the floor in a passage way in one of the school rooms. There was a hole in the floor about twelve by six inches, into which plaintiff, a teacher in the school, stepped and was injured. Plaintiff testified that she saw the hole about three weeks prior to the accident, during the interval she was engaged in another room in the building. *Held,* that plaintiff's prior knowledge did not constitute contributory negligence; that she had a right to suppose that, after so long an interval, repairs had been made.

There was testimony that the hole when uncovered was plainly in sight to any one in the passage way, but that a portion of the time the torn off cover of a dictionary was laid over it. Plaintiff was engaged in her duties as teacher with her eyes upon her scholars and their books, and was in the act of turning from a pupil when she fell. *Held,* that having her eyes and thoughts so occupied, and thus not observing the defect was not *per se* negligence.

The break in the floor had been there for three months, and it was inferable that it was due to natural wear and tear; two unsuccessful attempts had been made to repair it. The floor of the room was badly out of repair, this was known to the members of the board, and repairs had been proposed by that body. *Held,* that the evidence authorized a finding that the passage way was negligently out of repair.

*Bassett* v. *Fish* (12 Hun, 209), reversed.

(Argued November 15, 1878; decided November 26, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, in favor of plaintiff, entered upon an order affirming an order denying a motion for a new trial, and directing judgment on a verdict. (Reported below, 12 Hun, 209.)

This action was brought against defendants as trustees of "Gowanda Union Free School District No. 1" for alleged negligence in suffering the floor of one of the recitation rooms in the school-house in said district to become and remain out of repair in consequence of which plaintiff who was employed as a teacher in said school, stepped through a hole in the floor and was injured.

The said school district was organized under the provisions of the act of 1864 relating to public instruction which

authorizes the establishment of union free schools.   (Title 9, chap. 555, Laws of 1864.)

The facts appear sufficiently in the opinion.

*Sherman S. Rogers,* for appellants.   This action could not be maintained against the defendants individually.   (Laws 1864, chap. 555, § 13.)   The court erred .in refusing to charge that if plaintiff was so engrossed in performing her duties that her attention was diverted at the time from the existence of the hole, this would excuse her from heeding the fact and avoiding the accident.   (*Wilcox* v. *R. W. and O. R. R. Co.,* 39 N. Y., 358; *Baxter* v. *Troy, etc., R. R. Co.,* 41 id., 502; *Nicholson* v. *Erie R. Co.,* id., 525; *Barker* v. *Savage,* 45 id., 191; *Gibson* v. *Erie R. Co.,* 63 id., 449; *Morrison* v. *The Same,* 56 id., 302; *Mitchell* v. *N. Y. C. and H. R. R. R. Co.,* 64 id., 655; *Gray* v. *Second Ave. R. R. Co.,* 65 id., 561; *Cleveland* v. *N. J. Steamboat Co.,* 68 id., 306.)

*W. Woodbury,* for respondent.   Defendants were liable as trustees for injuries resulting from a failure to keep the school-house in repair.   (6 Stat. at Large, 304, 335, 337, 348, 350, 351, 353, 354; 23 Barb., 176; 13 Wend., 28; *People* v. *Utica Ins. Co.,* 15 J. R., 358; 2 id., 109; 5 Wend., 547; 9 id., 571; 19 id., 37; 24 id., 345; 1 Hill, 545.)   An action on the case for nonfeasance was the proper remedy.   (6 N. Y. Stat., 337, § 50; id., 361, 362, §§ 6–10; 14 J. R., 432; 18 id., 258, 284, 285; 6 Cow., 342.)   The injury having resulted from the defendants' wrong and they alone being responsible there could be no plea of non-joinder of defendants.   (Col. on Part., 640, § 727; id., 644, § 735; 2 Chitty Pl., 1; 2 Bacon's Abr., 11, 340; Graham's Pr., 393; 54 N. Y., 657.)   Defendants for wrongs or liabilities incurred by their negligence were not the agents of the district or acting under authority.   (23 Barb., 176; 7 Wend., 181.)   The body of the complaint set forth sufficient to show a right of recovery irrespective of the title.   (7 How.,

25; 3 Keyes, 497.) The. court, if necessary to sustain the judgment, could amend the name given to defendants in the title. (Code, § 73; 20 N. Y., 357; 32 Barb., 480; 24 Wend., 345.) As between the trustees and the district it made no difference by what name they were sued. (10 How., 143, 468.) The statute providing for suits against public officers, including trustees of school districts and the recovery of judgment against them, is applicable to this case. (2 N. Y. Stat. at Large, 494, 495, §§ 90, 92, 96, 108; 6 id., 353, 354, § 13.) Defendants were liable in a private action for the injuries sustained by plaintiff through their neglect of a duty imposed by law. (44 N. Y., 113; *Robinson* v. *Chamberlin*, 34 id., 389, 390; *Hicks* v. *Dorn*, 3 Hand, 47; *Fulton F. Ins. Co.* v. *Baldwin*, 37 N. Y., 648; *Adsit* v. *Brady*, 4 Hill, 630; *Smith* v. *Wright*, 27 Barb., 621; 24 id., 170; *Clark* v. *Miller*, 47 id., 38; *Wendell* v. *Mayor*, etc., 39 id., 335; 4 Keyes, 261; *Mayor* v. *Farze*, 3 Hill, 612; *Wilson* v. *Mayor*, 1 Den., 595; *Roch. Lead Co.* v. *Rochester*, 3 Comst., 469; *Hudson* v. *Mayor*, etc., 5 Seld., 163; 13 Hun, 427; 46 N. Y., 194; *Clark* v. *Miller*, 54 id., 528; 38 Barb., 163; 1 Seld., 48; 6 Hill, 240; 17 Wend., 250; 36 How., 481; 40 Barb., 256; 3 Duer, 241; 2 Robt., 268; 21 N. Y., 124; 50 id., 679; 45 id., 129; 54 id., 230; 29 id., 383; 35 id., 28; 59 id., 28; 54 id., 468; 1 Daley, 178; 24 How., 16; 33 Barb., 16; 33 id., 414; 49 id., 580; 3 Lans., 433; 29 N. Y., 383, 390; 35 id., 939; 44 id., 113; 3 Kern., 526, .533; 15 id., 415; 39 How., 418, 419; 24 Wend., 345; 1 .N..Y. Stat., 556.) Though plaintiff knew of the hole her ·mind being intent upon her duties she was not chargeable ·with neglect. (*Slawson* v. *Albany R. Co.*, 60 N. Y., 606.)

Folger, J. We have reached the conclusion, in this case, that the judgment for the plaintiff should be reversed, and a new trial ordered, with costs to abide event. Though this determination is based upon the character of the defendants, as components of a body corporate, it may be well that we give our notions of other points presented, so that they may

not embarrass a trial court, if the case is again brought before it.

It was urged that the negligence of the plaintiff contributed to her injury, and that therefore she cannot maintain her action ; and further, that that negligence was so manifest from the facts, as that it was matter of law to hold her culpable.

It is beyond doubt that she once knew that there was, in the floor, the hole through which her leg went. According to her testimony, there was but once that she saw the hole, before she went into it. That once, was on the first day on which she taught at the school ; which was on the ninth of April. She was hurt on the thirtieth day of that month ; after an interval of three weeks. It is to be noted here, that her duties, as teacher, were, during that interval, in another room in the school-house than the one in the floor of which was the hole. Now if we here assume, as we may, that it was the duty of her employer to give her a fit and safe place to do her work in, and to keep it in fit and safe state, she had a right to suppose that, after so long an interval as that of three weeks, repair had been made to any unsafe part of the premises upon which she was asked to be. That this hole, in size a foot long by half a foot wide, in the middle of a passage way in a school room, through which teachers and pupils would need to go, was an unsafe place, is plain. It must have been notoriously so to those whose duty took them to the room in which it was. Even if the recollection of having seen the hole there that once, by any association of ideas, came back to her after three weeks, on the day of her hurt, and before it happened, she might, without fault, give that remembrance but little heed ; for she might well suppose that repair had been made. And if she did not recollect it, it was not plainly negligence to have forgotten it, for she might well unburden her mind of it, because of her right to rest upon the assumption that her employer would do its duty to her and to others, and make prompt repair, where repair was so needful. So that it is too much to say, as

matter of law, that it was faulty in her not to act, on the day of her hurt, on her knowledge, which she had got three weeks before, of the being of this hole. It is true that there is testimony which is in some degree at variance with her's ; but we are to take, in considering the motion for a nonsuit, on the ground of her negligence, that which the jury might have wholly rested upon, had they so willed.

To go further, and to the occurrences of the day of the accident. There is testimony that the hole, when uncovered, was plain in sight to any one in the passage way, and from some other parts of the place. But it is also in testimony, that there was laid over it, more or less of the time, the torn off cover of a dictionary, which cover was not white in color on both sides. This cover was laid over to keep back the draft of cold air that would come through the hole when open. Now it was in the power of the jury to infer that that cover was large enough to hide the whole of the hole from casual sight ; that it was, in fact, over the hole when she went into the passage way, at the time of the accident, and that it hid the hole from her sight. Then too, it is in testimony that she was in the active doing of her duties, just beginning an exercise of her class in handwriting, walking to and fro, with her eyes upon her scholars and their writing-books, to see if each of them had his book in right place and position ; and that at the precise time, she was in the act of turning from a pupil who had especially needed her attention. The jury might, without strain upon the evidence, infer that the cover was over the hole, that her eyes and thoughts were on her pupils and that pupil and his actions ; and to conclude, that with no dark space open in the floor to strike her eye, it was not careless in her to have her mind and organs thus occupied, and not to become aware, a second time, that this hole was yet there, without a substantial guard against accident, by reason of it ; and then to find, that she was not lacking in the caution and care which the law exacts of a school-ma'am, of ordinary prudence in the affairs of her calling.

On the whole, it was not that plain case of negligence on her part that called upon the court to take the question from the jury and hold, as matter of law, that she was in fault.

The jury, upon all the proofs before them, have found that, as matter of fact, she was free from negligence, and by the considerations above stated, the courts may not disturb that finding.

The next question is, was there negligence somewhere, in not keeping that place in repair? And here again we must say, that there was testimony fit for the consideration of the jury, to find or not to find, as matter of fact, the existence of negligence. The break in the floor had been there three months. It was inferable that it was due, at first, not to violence locally applied, but to the natural wear and tear of the premises. It had been once repaired, and the repair lasted half-a-day. After some time without repair, it was mended again, and stayed mended a week, and then went without repair for other weeks. The floor of the room was known to be in very bad condition. The need of repair was known. This was known by the members of the corporate body. Repair, soon to be made, was proposed by that body. The fact of the hole was so well known to teachers, other than the plaintiff, and to scholars, as that the jury might infer that it was reasonable that those in charge of the building knew it. The mode of repair twice adopted was temporary and palliative in conception and execution. It was such as to tempt mischief, and to suggest to prudent minds that it could not be relied upon as likely to last. The jury might well find, that the passage way was negligently out of repair, and that some body, animate or corporate, was chargeable with neglect.

Further than this the case is more difficult for the plaintiff. If the defendants were in the position of the trustees of an ordinary school district, we would think that there was enough in the testimony to warrant the jury in charging them all with negligence in the performance of their duty. There was testimony that some of them had personal actual

knowledge of this particular defect in the floor and its
unsafe state ; that all of them knew of the condition of decay
of the building, of the need of repair, and had repeatedly
talked of it among themselves ; and thus the general con-
dition of the building in their especial charge was known to
all of them.   If, in the proper discharge of their duty, they
had gone to the building, and, looking for defects threatening
immediate danger, had found this hole, then they would
have had actual and personal knowledge of it, and would
have been in fault, if having public means to do it, they had
not amended it.   If so going, they had made so careless an
inspection as not to see what was so plain, then they would
have been faulty.   If they did not go at all, and took no
heed of the liability to danger from the general and par-
ticular defects of a building in their charge, which they kept
open for the use of many people, then they egregiously failed
in doing their duty.   (*McCarthy* v. *City of Syracuse*, 46
N. Y., 194.)   For if it be assumed, as well it may, that it
was their duty, if trustees merely, to take reasonable care
that the school rooms were in a reasonably fit state, it is clear
that if they had means of knowing that one of them was in
an unfit state, and were negligently ignorant thereof, they
did neglect their duty, and did not take reasonable care that
it was fit.   (*Mersey Docks Trustees* v. *Gibbs*, 3 Hurlst. &
Colt., 1043.)   That is to say, the jury, from the proofs in
this case, would have been justified in finding the defendants
negligent, had they been acting in the official character we
have supposed.   It is well to add, that the consideration is not
to be lost sight of here of whether, if trustees of an ordinary
school district, they had at their command means of their
constituents, by which to make repair.   (*Bartlett* v. *Crozier*,
17 J. R., 439.)

As a general rule, whenever one has suffered injury from
the negligence of an administrative officer, who therein acts
contrary to or neglects to act in accordance with his official
duty, an action lies on behalf of him injured : (*Hover* v.
*Barkhoof*, 44 N. Y., 113, and cases there cited.)   And such

an officer is also liable for the misconduct or negligence, in the scope of their employment, of those employed by or under him, voluntarily or privately, and paid by or responsible to him : (*Shepherd* v. *Lincoln*, 17 Wend., 250.)

But these defendants did not act as individuals, engaged in a joint undertaking, or under the duty to exercise carefully a joint power confided to them as such; nor did they act strictly as public officers, such as trustees of the original school districts of this State, or such as commissioners of highways. Union free school districts, as the result of a general power given by law to the inhabitants of one or more school districts, are solely the creatures of statute, and must look to the statute for all of their powers and the form of their existence. So also must the liabilities of them and of their officers, and the mode of enforcing those liabilities be measured greatly by the statute. Under the provisions of statute, the territory in which the plaintiff's harm came to her had been organized into a union free school district. The defendants had been duly chosen the trustees of it. Thereupon, by force of statute, they, at once on assuming the office, and their successors in office, constituted a board, having an individual name and style exclusively its own : (Laws of 1864, chap. 555, title IX, § 5, p. 1272.) The board thus formed was by that act at once created a body corporate : (Id., § 7, p. 1273.) Now it is true that the trustees of an ordinary school district are a *quasi* corporation, and have corporate powers *sub modo*, and for a few specified purposes only : (2 Kent Comm., 278.) Had no more been said in this statute than to give power to form a union district, and to elect trustees of it, they would have become such a corporation, and so would the board into which they were constituted. When then, the Legislature by the same act declared that the board was thereby created a body corporate, it must have meant to go further than merely to make a *quasi* corporation, and must have set out to make a corporation complete. No prescribed form of words is needed to that end. It is true that no powers are enumerated in the act as given

directly to the corporate body; that is to say, the enumerated powers are in terms given to the board of education. (Id., § 15, p. 1275.) Yet, as the board of education has been by the prior section already created a body corporate, it cannot be deemed thereafter to have an existence as a board separate and distinct in law from its existence as a corporate body, and it must be further deemed, that the powers enumerated in the act have been given to the corporate body which it has made. The powers enumerated are such, to be sure, as might (many of them) be reposed in school trustees, but in fact they are in some respects different from those given by the act to those officers (compare sections 49, p. 1252 and 50, p. 1254, with section 13, p. 1275); and they are given to the corporation; which also, by the fact of being created a corporate body takes all other powers and capabilities adapted to it which such entities have at common law or by other statutes. When a corporation is duly created, all other incidents are tacitly annexed to it. (1 Rol. Ab., 513.) These are numerous and important and include all which are needful to the life and well doing of such creatures of law. (2 Kent Comm., 277; 1 R. S., 559, §§ 1, 2.) It is seen at once that this body corporate is different from the *quasi* corporation, the trustees of a simple school district, and that it must act, and can act only in the mode and by the means appropriate to the metaphysical being, known to the law as a corporation. It is possible that the legislative creation of public officers of this sort into bodies corporate has been imitated from the legislation prevalent in England on this subject; and that it had in view the same object there sought and reached, viz.: the exemption of the private means of these officers from liability for the results of official action or inaction of themselves or through servants and agents. Much public service was done in that and in this country by public officers of minor grade, without compensation pecuniarily. To compel them to be liable, in their personal means, for damages caused by the act of underlings, was thought an hardship. The courts in England, on grounds

of public policy, held exempt from such liability their personal estate and the public moneys in their hands ; (*Hall* v. *Smith*, 2 Bing., 156) ; though still maintaining that they were liable personally for acts not within the scope of their authority, and for their own negligence. The system of making them a corporate body and giving them corporate powers, and rendering the liability corporate, not only gives the personal exemption, but saves a remedy to an injured party surer than that against the servants or agents actually at fault. (Per Blackburn, J., 3 H. & C., 1043, *supra*.) For, if the duty is put upon an incorporated body by the statute creating it, instead of upon the individuals acting as public officers, to take reasonable care that premises are in a fit state for use, those injured by the neglect of that body may have an action against it, and be indemnified out of the funds vested in it by the statute, or which it is impowered thereby to raise. (Id.)

However it may be as to the purpose of this legislation, that is the practical result of it. It flows from it, that these defendants never had the powers of trustees, nor were under the liabilities of trustees. They became the living agents through which a corporation manifested itself ; which exercised by them, the powers it had and was liable for the neglect to use those powers.

We are to treat the defendants then, in the first instance, as members of a corporate body, and related, as such, to the school district and its property, and to its teachers and scholars, and only as such. It is true that if any one of the defendants had done a wrongful act, willfully or negligently, upon the premises of the district, from whence injury came to teacher or scholar, he would ordinarily be liable ; but not because he was a trustee or a member of the board of education, but because he was the person doing the act. So it may be that if one of them had been duly charged by the corporate body, as its agent or servant, distinct from his relation as a corporator, with duty and responsibility, the neglect of which brought damage to another, he would be liable, as a private person, therefor. For generally the ser-

vant or agent will be liable, as well as the superior of him, for his neglect of duty. But it is not seen how a member of a corporate body, upon which body a duty rests, can be held individually liable for the neglect of its duty by that body. There is no duty upon him to act individually. His duty is as a corporator, and it is to act in the corporation in the way prescribed for its action, and by the use of its powers and means. And if there is neglect to exert its powers or all its means, it is the neglect of the body and not of the individuals composing it.

Hence we are unable to find reason for upholding the judgment against those of the defendants who were not personally charged by the corporate body with a duty, as its agent or servant, to keep these premises in repair. This certainly relieves all except the defendant Forbush. It is possible that he may be liable ; though we are not able to hold that it is properly so determined in this action. It does not appear that the attention of the trial court and of the jury was called to the particular state of facts which must exist to make him liable. He is sued jointly with all the others, as a trustee. He is sued as a public officer. But no liability, as we have seen, arises against him in that way. He is liable, if at all, as the agent of the corporate body, employed to make all needful repairs to the building and having undertaken so to do. But the jury have not, so far as we can gather from the record, passed upon that matter. The testimony is not so clear as that we may say how the fact is. It is in evidence that when any repairs were needed the board had an arrangement with him to go on and make them ; which was an understanding with the board, he being authorized, when any little repairs or supplies were needed, to make or furnish the same ; it would be talked over in a meeting of the board, if any little supplies were needed and any little repairs were needed, he was to do it. It is not quite distinct here whether each occasion for supplies and repairs was brought first before the board, and its order first had, before he was to provide them, on notice from

the board given to him, or whether there was a prior agreement, general in its bearing, by which he was to see to it, of his own motion, that the building was kept repaired and supplied in these small matters. In the one case, he would not be liable for neglect to repair, until moved thereto by the order of the board ; in the other, he possibly might be. The question of fact, what was the agreement, is still for the jury ; and thereon hangs the question of his individual liability. When that is solved, there yet remains the difficulty arising from the form of the action. It is not against the defendants,— Forbush among them,— simply as individuals ; it does not charge neglect upon them as private persons ; it is against them as trustees, as officials, and charges them with neglect as public officers, their official character being the opportunity or occasion of the neglect. As, if negligent, so as to be liable to action, Forbush must have been so, as the hired agent of the corporate body, engaged to act in his private capacity, and not as a person elected to office, and to be held by reason of, or as a result from his official character; the frame of the action is manifestly erroneous to that end, and the theory of the trial mistaken. We do not see then how Forbush is to be held liable, as the case now stands ; even if he is at all.

It is suggested that we may direct that the complaint may be amended, by striking out the names of the defendants and inserting that of the corporation. It seems to be thought that this would not be a change of parties, but only a change of name of the present defendants. This is not well conceived. To insert the corporate name would be to make the corporation the party, and to dismiss the defendants, as persons or officers, from the action. But we have not jurisdiction of the person of the corporation. It has not been brought into court. We may not make it a party to this action by such an amendment. Nor is it the better way, to consider whether we may amend the complaint by striking out the names of all but Forbush and the designation of him as trustee. It would be a complete change of the theory of the action.

Any motion for amendment will be better made and heard at a Special Term of the Supreme Court.

There were exceptions to a portion of the charge as made, and to a refusal to charge as requested. It is not needed that we notice them at length. If there is any flavor of error in them, it will probably be left out on a new trial.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

All concur, except Hand, J., of counsel not sitting.

Judgment reversed.