## CHARLES OLSON, *County Clerk,* v. LOGAN COUNTY BANK.

No. 2775.   Opinion Filed September 12, 1911.

**SCHOOLS AND SCHOOL DISTRICTS** — Separate Schools — Main-tenance—**Statutes.**   The act of March 6, 1901, entitled "An Act providing for the establishment and maintenance of separate schools for the white and colored children and for other purposes," was continued in force in the state by section 2 of the Schedule to the Constitution.   (a) By said act, under section 9, article 10, of the Constitution, a tax may be levied by the board of county commissioners of Logan county, not to exceed two mills, for the support and maintenance of separate schools.

(Syllabus by the Court.)

*Error from District Court, Logan County; A. H. Huston, Judge.*

Action by the Logan County Bank against Charles Olson, County Clerk of Logan County.   Judgment for plaintiff, and defendant brings error.   Affirmed.

*John Adams,* for plaintiff in error.

*Burford & Burford, Tibbetts & Green, Devereux & Hildreth,* for defendant in error.

*Milton Brown, amicus curiae.*

WILLIAMS, J.   This proceeding in error is to review the judgment of the district court in an action wherein the defendant in error, as plaintiff, sought to have the plaintiff in error, as defendant, required by order of said court to issue to the plaintiff a warrant on the treasurer of said county to pay a certain order issued by a certain school district of said county upon a fund in his custody for the maintenance and support of separate schools for the colored race.   It was tried upon the following agreed facts:

That the plaintiff was the owner and holder of a certain order drawn by the proper officers of School District No. 60 of said county for the sum of $72.00, drawn in favor of Mary M. Boone for one month's salary as school teacher for the sep-

arate schools of said district for the month beginning February 25, 1911, and ending March 25, 1911; that the said Mary M. Boone actually performed the services as teacher during said month under a written contract with the proper authorities of said school district and that neither the said Mary M. Boone nor the plaintiff, her assignee, had ever been paid for such service; that said order had been duly presented to said defendant, the duly qualified and acting county clerk of said county; that on request he had refused to issue a proper warrant upon the separate school fund of said county on said order, on the ground and for the reason that said defendant claimed that the county was not liable for the payment of the teachers in the separate schools, but that said school district alone was liable for said wages. That the county of Logan, for the fiscal year beginning July 1, 1910, and ending July 1, 1911, made a levy for the support and maintenance of separate schools of said county, and that there was at the time of the presentation of said order, as well as at the time of said trial, sufficient funds in the separate school fund in the treasury of said county to pay said warrant; that if said county is liable for the payment of the wages of the said Mary M. Boone for services in the separate schools in said district, it is the duty of the defendant to issue to the plaintiff, the holder of said order, a warrant on the treasurer of said county for the amount thereof against such school fund. That School District No. 60 is situated in Logan county, comprising the city of Guthrie, a city of the first class, and certain adjacent territory surrounding said city, and is a municipal corporation and a regularly organized school district and under the charge and direction of the board of education of said city.

Section 6469, Laws of Oklahoma Territory 1890, provides:

"In all counties in which the electors have voted to establish separate schools for white and colored children, the board of county commissioners shall annually levy a tax, on all taxable property in said county, sufficient to maintain such separate schools, and said taxes shall be collected in the same manner as other taxes are collected."

In 1892 this act was amended (section 5864, Laws Oklahoma Territory 1893) to read as follows:

"In all counties in which the electors have voted to establish separate schools for white and colored children, the board of county. commissioners shall annually levy a tax on all the taxable property in said county, sufficient to maintain such separate schools, and said taxes shall be collected in the same manner as other taxes are collected."

In 1897 (Sess. Laws 1897, chapter 34, article 1) the Legislature passed another separate school law, making separate schools compulsory, and this law was declared unconstitutional by the territorial Supreme Court in the case of *Porter v. County Commissioners,* 6 Okla. 550, but it was also held that as said act was unconstitutional, the attempted repeal of the law of 1893 was nugatory.

On March 8, 1901, the Legislature of Oklahoma Territory passed an act entitled "An Act providing for the establishment and maintenance of separate schools for white and colored children and for other purposes." Said act in part is as follows:

"In all counties separate schools for white and colored children are hereby established and such schools shall be permanently maintained and the board of county commissioners shall annually levy a tax on all taxable property in their respective counties, sufficient to maintain said separate schools as hereinafter provided; and taxes shall be estimated, published, levied and collected in the same manner as other taxes for county purposes and in school districts where such separate schools are maintained no white child shall attend a colored school or colored child attend a white school." (Sec. 1, art. 9, c. 28, Sess. Laws 1901, p. 205; Comp. Laws Okla. 1909, sec. 8200.)

"That in any school district in such county, having both white and colored children of school ages where the number of such children, either white or colored, does not exceed ten, and they can be transferred to schools of their own color in adjoining districts, as hereinafter provided, no separate schools shall be maintained." (Sec. 2, art. 9, c. 28, Sess. Laws 1901, p. 205; Comp. Laws Okla. 1909, sec. 8201.)

"When either the white or colored children of school age in any such school district, having both white and colored children of school age, do not exceed ten in number, the county

superintendent of schools of such county shall transfer the white or colored children that are the fewer in number to the nearest school of their own color in some adjoining district, when the same can be done with the consent of their parents, guardians or custodians; or without such consent, when any such children can be transferred without compelling them to travel more than two and one-half miles to attend such school. And when any child is so transferred to another school under the provisions of this act, the county superintendent shall apportion its per capita of all school revenue, except local school district tax and county separate school fund, to the school district to which it is transferred, and such children shall have all the rights and privileges in the school to which it is transferred that are enjoyed by children resident in such district." (Sec. 3, art. 9, c. 28, Sess. Laws 1901, p. 205.)

This act had the effect of repealing the separate school act of 1892. *Ripey & Son v. Art Wall Paper Mill Co:*, 27 Okla. 600.

Section 3 of article 13 of the Constitution provides that "separate schools for white and colored children, with like accommodations, shall be provided by the Legislature and impartially maintained." See, also, section 5 of article 1 of the Constitution. Except as otherwise limited by the Constitution said section 3 vests a discriminating power in the Legislature as to the providing such separate schools.

The act of February 15, 1911, entitled "An Act directing county superintendents of public instruction to employ the teachers for the separate or minority schools in their respective counties, empowering them to prescribe rules and regulations for the government of such schools, repealing all laws in conflict herewith, and declaring an emergency," provides for the employment of such teachers by the county superintendent and the prescribing of rules and regulations for the government of said schools by him, but nowhere provides for the support and maintenance thereof.

The first Legislature of the state enacted a law entitled "An Act providing for separate schools and school officers for the white and colored races in this state; and fixing a penalty for the violation thereof, and declaring an emergency." The first

section provides substantially that the public schools of the state shall be organized and maintained with impartial facilities for both races. Sess. Laws 1907-8, p. 694; Comp. Laws 1909, sec. 8193. The second section is declaratory of section 11, article 23, and section 3, article 13, of the Constitution of the state. Sess. Laws 1907-8, p. 694; Comp. Laws 1909, sec. 8194. The third section provides that wherever there shall be established and maintained a separate school, a separate board of school officers shall be elected and chosen for the management of such school as is provided by law for the election of other school officers. In districts having separate school boards the electors of each separate race shall meet as provided by law at their respective schools for which said directors are to be elected and the electors of one race shall not participate in any election pertaining to the schools of the other race. Sess. Laws 1907-8, p. 694; Comp. Laws 1909, sec. 8195. The last section has the effect of providing for separate school boards for the separate schools. But the act of the Legislature passed February 15, 1911, *supra,* seems to repeal by implication *pro tanto* said section to the extent of taking away from the school boards for the separate school districts the power to employ teachers for such school and authorizing said county superintendent to make such employment. *Mathews v. Board of Corporation Commissioners,* 97 Fed. 400.

The separate school act of the first state Legislature did not pretend to provide for the maintenance and support of such schools, and consequently left in force any valid existing statutes on that subject. The separate school act of March 8, 1901, which provides for the support and maintenance of separate schools, seems to control, unless it is repugnant to the Constitution or locally inapplicable. Sec. 2 of the Schedule to the Constitution. We fail to see wherein it is repugnant to the Constitution or locally inapplicable.

Section 9 of article 10 of the Constitution provides:

"Except as herein otherwise provided, the total taxes on an *ad valorem* basis, for all purposes, state, county, township,

city or town, and school district taxes, shall not exceed in any one year thirty-one and one-half mills on the dollar, to be divided as follows:

"State levy, not more than three and one-half mills; county levy, not more than eight mills; *Provided,* That any county may levy not exceeding two mills additional for county high school, and the aid to the common schools of the county, not over one mill of which shall be for such high school, and the aid to said common schools shall be apportioned as provided by law; township levy, not more than five mills; city or town levy, not more than ten mills; school district levy not more than five mills on the dollar for school district purposes, for support of common schools; *Provided,* That the aforesaid annual rate for school purposes may be increased by any school district by an amount not to exceed ten mills on the dollar valuation, on condition that a majority of the voters thereof voting at an election, vote for said increase."

The separate schools required to be maintained by section 3, article 13, are a part of the system of free public schools provided for in section 1 thereof. In *Board of Education of City of Ardmore v. State,* 26 Okla. 366, 109 Pac. 563, it was held by this court that the free public school system which the Legislature of this state was directed to establish by said section 1 is a matter of general or state concern, and not a municipal affair. A school district levy of not more than five mills for school district purposes for support of common schools being especially provided for in section 9, article 10, *supra,* with conditions for an additional ten mills, unless in a legal and valid manner the support and maintenance of separate schools has been otherwise provided for, such burden must be borne by the school districts. The free public school system, of which the separate schools are a part, being a state purpose, or a matter of general state concern, not being a county purpose, no part of said eight mills, as to a county levy for county purposes, may be applied to common or public schools. The Constitutional Convention, moreover, contemplated that it might be necessary or wise to make a county levy to aid in the support and maintenance of the free public school system. Hence the first proviso

in said section, "That any county may levy not exceeding two mills additional for county high school and aid to the common schools of the county, not over one mill of which shall be for such high school, and the aid to said common schools shall be apportioned as provided by law."

The act of March 8, 1901, *supra,* not being locally inapplicable or repugnant to the provisions of this Constitution, except that the levy permitted to be made by said act by the board of county commissioners is limited by section 9 of article 10 to two mills, and in the event a county high school existed in the county it might then become limited to one mill, was continued.in force in the state by virtue of section 3 of the Schedule.

Under section 4, article 13, the Legislature is required to provide for at least three months of free public school in each school district during each year. If the maximum tax that is permitted to be levied by the board of county commissioners for the maintenance and support of separate schools is not sufficient to maintain, without discrimination, such schools for at least the period of three months, the burden is upon such school district to supplement the same out of the tax levy made under said section 9 for the support and maintenance of such schools.

The Attorney General's office was requested in open court to file a brief in this case, the public importance of the question involved seeming to the court to require the attention of the law officer of the state. Though two months have elapsed since such time, no such brief has been filed. The court, realizing the importance of the question involved, has carefully considered all of the briefs filed, not only by private counsel, but also by the county attorney of Logan county, and in addition has made careful investigation and research in order to doubly insure a correct conclusion being reached. We have concluded that the judgment of the lower court is without prejudicial error. It is accordingly affirmed.

TURNER, C. J., and DUNN and KANE, JJ., concur; HAYES, J., concurs in the conclusion.