## CONSOLIDATED SCHOOL DISTRICT NO. 1 et al. v. WRIGHT.

No. 18379. Opinion Filed Dec. 13, 1927.

(Syllabus.)

**Schools and School Districts — Consolidated Districts—Nonliability of District or Board for Injuries to Pupil Caused by Negligent Driving of School Bus.**

Furnishing free motor transportation to public school children under section 10465, C. O. S. 1921, by a district board of a consolidated school district is a public governmental function, and neither said school district, nor said board, nor the individual members thereof, are liable in damage for injuries to a pupil caused by the negligence of its officers, agents, or employees, in the control or operation of its motor truck for such purpose, where they have acted in good faith and without malice.

Commissioners' Opinion, Division No. 1.

Error from District Court, Tulsa County; Luther James, Judge.

Action by Rilda Wright, by her father and next friend, T. L Wright, against Consolidated School District No. 1 of Tulsa County, Okla., et al. Judgment for plaintiff, and defendants appeal. Reversed and remanded, with directions

Randolph, Haver & Shirk, for plaintiffs in error.

Harry E. Stege and Moss, Searcy, Montgomery & Young, for defendant in error.

The Attorney General, amicus curiae.

BENNETT, C. On November 4, 1925, Rilda Wright, plaintiff, aged 14, a resident of and a pupil in consolidated school district No. 1, in Tulsa county, Okla., was permanently and seriously injured in an accident to a school bus. The bus was being driven by one H. L. Mayfield, the regular driver, who was also a teacher in the school. Parties will be referred to as they were designated in the trial court.

The school was in the village of Turley. As the bus, loaded with school children, was being driven about 8 o'clock in the morning toward the village, the two right wheels went off the pavement, which was wet from mist and rain. This was at a point near a culvert and the road was slightly down grade. The driver succeeded in getting the front wheel back on the pavement, but when the rear wheel came back on the pavement the bus, on account of the heavy load, the grade, and wet pavement, skidded

around, and the rear end struck the abutment of the culvert and overturned, and plaintiff was injured.

Brady Taylor, L. J. Garnett, and William Robinson comprised the board of said school district. Mayfield was not made a party. The negligence alleged is that Mayfield was an inexperienced and incompetent driver; that the defendants, the school district and the individual members thereof, were negligent in that they knew or should have known that the said driver was incompetent and inexperienced, and that he had had a number of accidents, and that he was an unsuitable and improper person to have charge of the transportation of said pupils, by reason whereof the plaintiff was injured.

There was a general demurrer filed by each and all of the defendants, and later motions to direct verdict, and the same were overruled with exceptions. There was a verdict of a jury and a judgment thereon. for $50,000 against all the defendants, and for review thereof this appeal is lodged here. There are eleven assignments of error, but in the argument three questions are presented:

(1) Are school districts in Oklahoma liable in tort?

(2) Are the members of the school board liable in tort as individuals for an act done by them as a board?

(3) Erroneous instructions.

This case has been skillfully tried, and there are exceptional briefs filed on the part of each party. The clear-cut and candid announcement of law applicable to this case in the respective briefs is of the greatest aid to the court in determining the law questions involved. For example, with respect to a proper answer to questions Nos. 1 and 2 (which points we now hold to be finally determinative of this case), the plaintiff, on page 11 of the brief, uses the following language:

"In the first place we believe that the rule is this: If a municipal corporation is in the exercise of a purely governmental function, that then neither the corporation nor its governing officers are liable in tort for injury resulting from the exercise of such strict and purely governmental function. On the other hand. it is equally true that if the tort is committed in the exercise of a corporate or proprietary function, as distinguished from a purely governmental function, then such municipal corporation is liable in tort for such injury."

Further:

"Our next proposition is that where the power exercised is intended for the private advantage and benefit of the corporation, or its inhabitants, or for the benefit of a limited number of its inhabitants, then such municipal corporation is subject to the same liability as an individual would be exercising the same powers for purposes essentially private. In the instant case the power exercised was the furnishing of motor transportation, which was not mandatory on the defendants, to a limited number of the inhabitants of the defendant district for the private advantage of certain localities in the district, the inhabitants thereof, and for the private advantage of the district itself. Consequently, the defendant district was in the exercise not of a purely governmental function necessary to the administration of the laws of the state. but, on the other hand, was in the exercise of a corporate or proprietary function. and therefore liable for this injury."

Accepting at full face, therefore, this statement of the plaintiff, if the furnishing to the plaintiff of transportation to the common free school by the school board was an exercise of a purely governmental function, then the answer to these two pivotal questions must be in the negative. On the other hand, if the same was in the exercise of a corporate or proprietary function, or if the same was exercised and intended for private advantage, and for the benefit of the corporation, or its inhabitants, or for a limited number of such inhabitants, then such exercise would not be a governmental function, but would be essentially private, and liability would follow.

1. Is the furnishing of free transportation by the school boards of the state to those pupils within their several consolidated school districts, who reside two or more miles from school, an exercise of governmental function?

The Constitution of Oklahoma, article I, sec. 5, provides:

"Provisions shall be made for the establishment and maintenance of a system of public schools, which shall be open to all the children of the state and free from sectarian control. * * *"

Article 13, sec. 1, provides:

"The Legislature shall establish and maintain a system of free public schools wherein all the children of the state may be educated."

Article 11, sec. 2, provides, among other things:

"All proceeds of the sale of public lands that have heretofore been, or may be hereafter, given by the United States for the use and benefit of the common schools of

this state. all such per centum as may be granted by the United States on the sales of public lands, the sum of five million dollars appropriated to the state for the use and benefit of the common schools in lieu of sections 16 and 36, and other lands of the Indian Territory, the proceeds of all property that shall fall to the state by escheat, the proceeds of all gifts or donations to the state, * * * shall constitute the permanent school fund, the income from which shall be used for the maintenance of the common schools in the state. The principal shall be deemed a trust fund held by the state, and shall forever remain inviolate. It may be increased, but shall never be diminished. The state shall reimburse said permanent school fund for all losses thereof which may in any manner occur, and no portion of said fund shall be diverted for any other use or purpose."

Section 3 of said article provides:

"The interest and income of the permanent school fund, the net income from the leasing of public lands, * * * together with any revenues derived from taxes authorized to be levied for such purposes, and any other sums which may be added thereto by law, shall be used and applied each year for the benefit of the common schools of the state, and shall be, for this purpose, apportioned among and between all the several common school districts of the state in proportion to the school population of the several districts, and no part of the fund shall ever be diverted from this purpose, or used for any other purpose than the support and maintenance of common schools for the equal benefit of all the people of the state"

Article 13, sec. 4 provides:

"The Legislature shall provide for the compulsory attendance at some public or other school, unless other means of education are provided, of all the children in the state who are sound in mind and body, between the ages of eight and sixteen years, for at least three months in each year."

Our highest court, speaking through Justice Williams, in the case of Oklahoma Ry. Co. v St. Joseph's School, 33 Okla. 755, 127 Pac. 1087, announces the doctrine, which must be perfectly obvious from reading the foregoing excerpts from the Constitution, that:

"The free public school system, which the Legislature of this state was directed to establish by section 1 of article 13 of the Constitution, is a matter of state concern and not a municipal affair." (Citing Olson, County Clerk, v. Logan County Bank, 29 Okla. 391, 118 Pac 572; Board of Education of the City of Ardmore v. State, 26 Okla. 366, 109 Pac. 563 )

It will be seen that in chapter 86, C O.

S. 1921, entitled "Schools," there is formulated under the above constitutional provisions a comprehensive system of public schools for the state of Oklahoma. Section 10337, art. 7, of said chapter provides:

"Every school district organized in pursuance of this article shall be a body corporate, and shall possess the usual powers of a corporation **for public purposes,** * * * and in that name may sue and be sued. * * *"

But the words "may sue and be sued" have been held not to authorize an action for negligence, but to refer to suits in respect to matters in the scope of its duties. State, Use of Weddle, v. School Com., 94 Md. 334, 51 Atl. 289; Daniels v. Board of Education, 191 Mich. 339, 158 N. W. 23, L. R. A. 1916F, 468.

Under section 10352, art. 9, Id., it is provided that all school district officers, before entering upon their official duties, shall take an oath that they will perform the duties of the school district, will faithfully discharge the duties pertaining to the office, obey the Constitution and laws of the United States and of Oklahoma, and the following section provides that if they should neglect to perform their duties, they shall forfeit the office: Section 10370 provides:

"All property held by the school district of any school district in this state for the use of the public schools, shall be exempt from taxation, and shall not be taken in any manner for any debt due from the district."

From a perusal of these various provisions of the Constitution and the legislative enactments, carrying out the powers and performing the duties enjoined therein, it seems entirely clear that it was intended by the Constitution and subsequent enactments of the Legislature in pursuance thereof to adopt and provide a complete, unified, uniform and comprehensive system of schools for the benefit of the entire state and its citizenship, and that such provisions of the law should govern the schools in every district of this state. It should be noted, too, that for the purpose of more efficiently carrying into effect this system, the work of and responsibility for executing this system was committed by the law to district boards, quasi corporations, called into being **nolens volens** for **public p rposes,** without profit or compensation, the officers of which are selected by the voters of the district which they represent. The duties of these officers, except in such instances as must of necessity require the exercise of sound discretion, are largely determined by the school laws of our state. They must provide school buildings, grounds, equipment, books, teachers,

transportation In the performance of these duties, are these boards performing a proprietary or private duty, or are they performing the duties that the state, in its wisdom, has taken unto itself—that of the education of its citizenship? It seems too clear for argument that these are governmental functions in their entirety.

It is contended by plaintiff that the furnishing of transportation is purely ministerial. With this view we cannot agree. It is as necessary to make accessible to the children of the state the facilities of education as it is to furnish the facilities. The care of the lives and limbs of the pupils, who must be confided to those who conduct the transportation, is as necessary to be safeguarded as is the proper training of their minds in the school We are entirely unable to follow the argument advanced that, while the school board in exercising its discretion in determining whether the pupils shall be conveyed by teams or trucks is performing a governmental function, yet that the selection of safe, convenient, and commodious conveyances, and the procuring of competent and dependable drivers is merely a ministerial act. The line of distinction is too fine, and we think the criterion should be whether or not the acts done are essential and necessary and are intended for the purpose of carrying into effect the comprehensive educational program contemplated by the Constitution and statutes of this state, and if so, the performance of those tasks is a governmental function and not a private enterprise.

Section 10465, C. O. S. 1921, which sets forth the powers and duties of consolidated district boards, is as follows:

"The powers and duties of the district boards herein provided and of the several officers shall be the same as those provided by law for school districts and their several officers, and in addition it shall be the duty of said district board to provide transportation to and from school for all pupils residing two or more miles therefrom, in suitable vehicles, * * * driven by competent persons of good moral character. * * * Provided, further, that the school board may provide motor transportation for pupils as provided in this act, which may be either hired or purchased by the school board of said consolidated district."

A part of the foregoing section, including the provision for free transportation by team, appears to have been brought forward from chapter 219, sec. 4, art. 7, Session Laws of Oklahoma 1913 An amendment not pertinent here was made to said section by chapter 36, Session Laws 1915. This sec-

tion was again amended by chapter 93, Session Laws 1919, by which, for the first time, the proviso for the furnishing of motor transportation was added.

It will thus appear that it was the mandatory duty of the district boards to furnish free transportation by team to all pupils living two or more miles from school. This was a general statute defining the duties of every district board, and also defining the right and privilege of every child of school age in this commonwealth with respect to transportation to and from school. The amendatory act of 1919 in no way relaxed the duty of the board, nor did it withdraw any benefit theretofore extended to the pupils, but only permitted the board to adopt, within its discretion, more modern vehicles made necessary by the greater number of students, the larger school districts, and the revolution in transportation.

Plaintiff's first contention is that this is not a governmental function, because, in the language of the brief:

"It will be seen by the provisions of this statute it is not mandatory upon the school district to furnish motor transportation to the pupils governed by said section, but that it is discretionary with said district."

This position is best answered by the syllabus in the case of Krueger v. Board of Education of St. Louis, 310 Mo. 239, 274 S. W. 811, 40 A. L. R. 1086:

"That a school district voluntarily undertakes to operate a lunch room in a school building, under statutory authority, and is not compelled to do so, does not make its act other than governmental so as to render it liable for personal injuries caused by negligence in the operation of the plant"

The court in a very exhaustive opinion says:

"In Cochran v. Wilson, 287 Mo. 210, 229 S. W. 1050, the essential discussion was of the grounds on which the board of education was held not liable for negligence. The plaintiff was injured in passing down steps alleged to have been insufficiently lighted. There was an extensive review of the cases involving suits against quasi corporations, mainly counties and special road districts. The nonliability of these corporations in their character as such was shown to rest upon a line of rulings almost unbroken."

In the case of Dick v. Board of Education (Mo.) 21 A. L. R. 1327, 238 S. W. 1073, plaintiff was a pupil, and rightfully on the playground of the school, and was injured by a motor truck operated by an employee of the defendant in the course of performance of its corporate duties. The court said:

"There can be no doubt that, when the state establishes and provides for the maintenance, operation, and management of public schools for the education of all children alike, at the expense of the public, it is acting in pursuance of a governmental policy founded solely in the public good When these duties are * * * confided by law to a quasi corporation created for that purpose, such corporation is charged with the use of public funds devoted by law to that object. To that extent it is simply an instrument of the state government, and is entitled to no pecuniary profit from its services, which are devoted solely to the public. We discussed this principle in the light of numerous authorities cited in our opinion in Zummo v. Kansas City, 285 Mo. 222, 225 S. W. 934, and held, in substance, that, while a municipal corporation in this state is generally liable for damages resulting from its negligence in the construction and maintenance of the public highways within its limits, because the power and duty of the municipality in that respect is conferred upon it largely for the pecuniary profit of the owner and dedicator of the land to such uses and his successors as members of the corporation, there was no such ground for liability in the operation of a hospital under a special provision of its charter, as well as a general power relating to the public health. That the same principle applies to the liability for negligence of the quasi corporate instrumentalities charged by law with duties respecting public education has, since this appeal was taken, been upon full consideration. decided by this court * * * in Cochran v. Wilson, 267 Mo. 210, 229 S. W. 1050. This leaves nothing further to be said."

Quoting further from the Krueger Case:

"There is no good reason why a school district should be liable to an action for damages because voluntarily, yet pursuant to a general authority, it furnishes a certain convenience in aid of its schools. when, if the furnishing of that convenience were made mandatory, there would be no liability under a like charge of negligence. In one case the necessity and expediency would be determined by the Legislature; in the other, the necessity and expediency would be left by the Legislature to be determined by the local governmental agency. * * * Cases dealing with the question of there being a distinction between duties mandatory and duties voluntarily assumed as authorized may be seen. Tindley v. Salem, 137 Mass. 171, 50 Am. Rep. 289; Pope v New Haven, 91 Conn. 79, L. R. A. 1917B, 1239, 99 Atl. 51; Nicholson v. Detroit, 129 Mich. 246, 56 L. R. A. 601, 88 N. W. 695; Emmons v. Virginia, 152 Minn. 295, 29 L. R. A. 860, 188 N. W. 561. The tenor of these cases is that, so far as governmental acts are concerned, no distinction is to be made between those directed to be done, and those authorized to be done."

Plaintiff makes the further contention that the furnishing of motor transportation was not a governmental function for the reason that the same was not furnished all the pupils of the school district, but that the same was furnished for the private advantage of a few of the pupils of the district. This contention needs no further answer, we think, than the simple statement that the furnishing of free transportation, whether by team or motor, applies uniformly to every district within the state. Of course, its benefits are extended only to those who are supposed to need them—those who reside two or more more miles from the school, but this has uniform application to all such students. and is no more discriminatory than the act providing for free schools, the benefits of which are extended only to children of school age and not to all the children in the district.

In the case of Harris v. Salem School District (N. H.) 57 Atl. 332, the syllabus reads as follows:

"Any duty of a school district to transport school children to and from school is a public duty, and their right to be so transported is a public right, so that, in the absence of a statute making the district liable, an action may not be maintained against it for personal injury to a scholar from its negligent furnishing of unsafe and unsuitable means of conveyance.

"A town school district which undertakes, at the public expense, to transport the pupils to and from school, is not liable for sickness contracted by a pupil because of exposure to inclement weather during such transportation, the court stating that assuming that it was the duty of the district to provide transportation, it was a public duty from which the district derived no benefit or advantage, and that it long had been the recognized law of the state that an action could not be maintained against the municipality for damages to an individual suffered by reason of the negligent performance of public duties." Harris v. Salem School Dist., supra.

"The general rule in this country is that a school district, municipal corporation, or school board, is not, in the absence of a statute imposing it, subject to liability for injuries to pupils of public schools suffered in connection with their attendance thereat, since such district. corporation, or board. in maintaining schools, acts as an agent of the state, and performs a purely public or governmental duty, imposed upon it by law for the benefit of the public, and for the performance of which it receives no profit or advantage." Note I. 9 A. L R.. page 911; citing Lane v. Woodbury, 58 Ia. 462, 12 N. W. 478; Ernst v. West Covington, 116 Ky.

850, 63 L. R. A. 652; State, use of Weddle, v. School Com'rs, 94 Md. 334, 51 Atl. 289; Bigelow v. Randolph, 14 Gray, 541 (Mass.); Hill v. Boston, 122 Mass. 344; Daniels v. Board of Education, 191 Mich. 339, L. R. A. 1916F, 468, 158 N W. 23; Bank v. Brainerd School Dist., 49 Minn. 106, 51 N. W. 814; Finch v. Board of Education, 30 Ohio St. 37, 27 Am. Rep. 414; School Dist. v. Fuess, 98 Pa. 600, 42 Am. Rep. 627; Ford v Kendall School Dist., 121 Pa. 543, 1 L. R. A. 607, 15 Atl. 812; Rosenblit v. Philadelphia, 28 Pa. Super. Ct. 587; Wixon v. Newport, 13 R. I. 454, 43 Am. Rep. 35.

"The placing of a pail of hot water and chemicals in the passageway of a school building for use in scrubbing floors pertains to the governmental act of the school district, for injury by which to a pupil the district is not liable" Dolores Juul. etc., v. School Dist., 168 Wis. 111, 169 N. W. 309 (citing Bernstein v. Milwaukee, 158 Wis 576, L. R. A. 1915C, 435; Folk v. Milwaukee. 108 Wis. 359. 84 N. W. 420; 35 Cyc. 971; 19 R. C. L. 1124).

In section 2675, vol. 6, of McQuillin on Municipal Corporations, it is said:

"A municipality is not liable for the negligence or other wrongful act of school officers, since education is a governmental function."

In Shearman & Redfield on Negligence, section 267, it is said:

"The duty of providing means of education, at the public expense, by building and maintaining school houses, * * * is purely a public duty, in the discharge of which the local body, as the state's representative, is exempt from corporate liability for the faulty construction or want of repair of its school buildings, or the torts of its servants employed therein."

In 4 Dillon on Municipal Corporations (5th Ed.) section 1658, it is said:

"When a municipal corporation is charged by charter or statute with the duty of erecting and maintaining public schools for the education of the children of the municipality, the weight of authority is to the effect that, in the exercise of the power so conferred, it performs a public or governmental duty, and not a special corporate or administrative duty as distinguished from a state or public duty, and it is not impliedly liable for the wrongful acts and negligence of its officers or agents in maintaining and repairing school buildings." ·

The rule as stated in 19 R. C. L. section 402, is as follows:

"In this country it is regarded as the duty of the state to establish and maintain at the expense of the taxpayers a system of education for all children who live within its limits, and if, for the purposes of convenient administration, this duty is delegated to the municipal corporations of the state, or to quasi corporations, formed for the purpose, the duty is still public and governmental, and such corporations or quasi corporations cannot be held liable for the negligence of their employees in performing it. In applying this doctrine it has been held that such bodies are not liable for personal injuries to pupils, resulting from the defective condition of the school buildings, or from the negligence of the persons in charge thereof."

To the same effect: Schwalk's Adm'r v. Louisville, 25 L. R. A. (N. S.) 88, and in a note to Ernst v. West Covington, 3 Ann. Cas. 882; Gutowski v. Baltimore, 127 Md. 510, 96 Atl. 630.

In the case of Gold v. Baltimore (Md.) 112 Atl. 588, 14 A. L. R. 1389, the syllabus is as follows:

"A municipal corporation charged by law with the duty of maintaining public schools for the education of children within its limits is not answerable in damages for injury to a child by fall of a door in a school building, which is negligently permitted to get out of order." (Citing Howard v. Worcester, 153 Mass. 426, 12 L. R. A. 160; McNeil v. Boston, 178 Mass. 326, 59 N. E. 810.

The only outspoken authority contrary to the foregoing rule appears to be found in the decisions from New York state, of which the leading case is Herman v. Board of Education, 234 N. Y. 196, 137 N. E. 24. It appears that there has been much variety in the holdings in New York upon this question as may be seen from the annotations following that case in 24 A. L. R. 1070 but the third syllabus in the New York case above referred to is as follows:

"The negligence of members of a board of education in the discharge of their corporate duties does not render them individually liable for the resulting injury."

As authority the above case cites Bassett v. Fish, 75 N. Y. 303, and under this syllabus is cited as authority 24 R. C. L. 606.

In Cooley's Municipal Corporations, page 376, the rule is laid down:

"No action lies at common law against a municipal corporation for an injury resulting from the performance or nonperformance by it of a purely governmental duty" —and on the following page, under head of "Public Functions" the following is found:

"Prominent among these governmental functions are: (1) The preservation of the public peace; (2) the preservation of the public health; (3) punishment of criminals; (4) preventing destruction by fire; (5) fur-

nishing public education; (6) providing for the poor."

"The line separating governmental from municipal duties cannot always be plainly seen; but there are certain functions performed by municipal corporations which are confessedly public, out of which no private action can arise, not only because the state is sovereign and the municipality its agent, but also for the reason that the constant fear of liability for damages while acting for the public welfare would prevent proper performance of these public functions by the corporation." Cooley, supra, p. 377.

Oklahoma has recognized these general principles in the following cases: School Dist. v. Zediker, 4 Okla. 599, 47 Pac. 482, in which the court said:

"A school district is but a subordinate agency of the territory doing the work of the territory."

James v. Trustees. 18 Okla. 56, 90 Pac. 100, holds that school districts are but auxiliary parts of the sovereignty, and the court declares it to be the law in Oklahoma that, in the absence of express statute imposing liability for negligence, there is no liability in a civil action for damages for neglect of public duty.

In the case of Cummings v. Lobsitz, 42 Okla. 704, 142 Pac. 993, the fourth paragraph of the syllabus reads as follows:

"No liability is created against a municipal corporation by acts of its officers, done under an unconstitutional or void resolution enacted in the exercise of governmental powers, and the fact that the council passed, and the street commissioner enforced, such void resolution, does not make the city liable."

Section 1640, vol. 4. Dillon on Municipal Corporations, is as follows:

"According to the prevailing rule, counties are under no liability in respect of torts, except as imposed (expressly or by necessary implication) by statute. * * * On the same grounds, such organizations as townships, school districts, road districts, and the like, * * * have been very generally considered not to be liable in case, or other form of civil action, for neglect of public duty, unless such liability be created by statute."

From a rather comprehensive study of the question, we believe it may safely be said that perhaps New York is the only state which has held school districts liable for negligence, except, perhaps, in the case of the state of Washington, in which the matter is governed by statute.

Cases supporting the general rule may be found in Arizona, Alabama, California

Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Michigan, Maryland, Massachusetts, Missouri, Minnesoto, New Hampshire, North Dakota, Oregon Ohio, Pennsylvania, Rhode Island, Texas, Utah, West Virginia and Wisconsin.

**2. Are the members of the school board liable in tort as individuals for an act done by them as a board?**

"Public and municipal officers are not individually responsible for the negligence of those whom they are obliged to employ in the discharge of their duties in the execution of public works or otherwise. Such employees are not their servants, and the rule **respondeat superior** does not apply to charge them with responsibility for the acts of employees." Dillon on Municipal Corporations, vol. 1, sec. 442.

"The officers of a municipal corporation are not liable for errors or mistakes of judgment in the performance of acts within the scope of their authority as to which they are empowered to exercise judgment and discretion in the manner of their performance, in the absence of malice or corruption or a statutory provision imposing the liability." Id., sec. 439.

See, also, Daniels v. Board of Ed. (Mich.) L. R. A. 1916F, 468; 5 L. R. A. (N. S.) 468. In Hydraulic Press Brick Co. v. School Dist., 79 Mo. App. 665, it was held that since the school directors did not act as individuals, their failure to take a bond from a contractor did not make them liable individually. The same general principle is announced in Bassett v. Fish 75 N. Y. 303. In Monnier v. Godbold, 116 La. 165, 5 L. R. A. (N. S.) 463, it is stated:

"It is not seen how a member of a corporate body, upon which body a duty rests, can be held individually liable for the neglect of its duty by that body. There is no duty upon him to act individually. His duty is as a corporator, and it is his duty to act in the corporation in the way prescribed for its action and by the use of its powers and means. And if there be neglect to exert its powers or all its means, it is the neglect of the body, and not of the individuals composing it."

Even under the New York rule the members of the board individually would not be held. Bassett v. Fish, 75 N. Y. 303; Herman v. Board, 234 N. Y. 196, 137 N. E 24, in which the court says:

"Their corporate character protects them from individual liability, where their official character is the opportunity or occasion of the neglect."

Counsel for plaintiff on pages 10-11 of their brief say:

"It will be seen that by exercising its discretion and furnishing the motor transportation to a limited number of inhabitants of the district and in placing a driver in charge of the pupils served, the school district and its board assumed and occupied the position of carriers of persons."

And several cases are cited under this statement dealing with the rule affecting **carriers for hire.** These authorities are clearly not in point. We are also cited to the case of Shawnee v. Roush, 101 Okla. 60, 223 Pac. 354. That case had reference to the claim of negligence asserted by a paying patient against a hospital. Obviously, this has no bearing upon the question at issue. The case of Oklahoma City v. Foster, 118 Ok'a. 120, 247 Pac. 80, was one in which the city was operating a garage for its own private advantage and for the benefit and profit of the city as a legal entity, and the same is easily distinguishable on that ground. The facts in the case of Oklahoma City v. Hill Brothers, 6 Okla. 114, 50 Pac. 242, disclose that the action complained of was for the private corporate benefit of the city, and that the city accepted the benefits of the act of its officers in wrongfully taking possession of property. This action seems to have been taken for the sole benefit of the city. We are referred to Williams v. Board of Trustees, 205 N. Y. S. 742, in which the board was held liable for injury to a pupil due to the negligence of an incompetent driver. We have indicated that New York stood alone, and while they may be right, we prefer to follow the great weight of authority elsewhere.

The case of Wiley Adm'r. v. Harrison, 105 Okla. 280, 232 Pac. 816, is brought to our attention as authority. That was a case where the petitioner alleged that the city manager willfully and wantonly employed and retained in his employment a policeman who was known by him to be a man who habitually resorted to acts of unnecessary violence, imbued with a propensity to kill unnecessarily, and especially weak and helpless persons, and without justification; and that after the policeman killed a youth, under circumstances which showed the same to be wholly unjustified, unnecessary and unwarranted, the said defendant, with full knowledge of all the facts, commended the defendant for the act of killing said minor and still retained him as a policeman. The court in the opinion said:

"We simply hold in this case that the first amended petition stated a cause of action in favor of the plaintiff and against the defendant Harrison, and that the court erred in striking the averments indicated from said amended petition."

That was the substance of the holding of the court. That case involved general, if not special, malice and bad faith, and there may be found some authority to support the holding, even in the cases cited hereinbefore. It is sufficient, however, to say that in the case at bar there is no suggestion of bad faith or wantonness or willfulness, and the case is, therefore, not parallel.

We have also considered the cases of Perkins v. Blauth (Cal.) 127 Pac. 50; Pullen v. City of Eugene (Ore.) 146 Pac. 822, 147 Pac. 768; Mott v. Hull, 51 Okla. 602, 152 Pac. 92, and Strong v. Day, 61 Okla. 166, 160 Pac. 722, but as we read them, the principles involved do not run counter to the holding of the court as herein indicated.

It is proper too to bear in mind that the public school funds, under the plain provisions of our Constitution and pertinent statutes, shall never be in any manner diverted from the purpose for which they were intended, and, also, that school property is exempt from execution for debt. The inquiry immediately arises: How shall a judgment recovered in an action for tort be liquidated? The fact that there is no fund out of which to pay such judgment is argued in many responsible quarters as indicating that the lawmaking power did not recognize the right to recover such judgments, and this is further emphasized by the specific provision in the Constitution and in the statute that the school fund shall remain inviolate.

We have gone over with great care the entire record in this case, the age of the plaintiff, the fact that she was without fault, and in a place where she had a right to be, and the fact of the terrible injury which she suffered makes a strong appeal, but our duty, as we see it, is plain and after digesting the current and the weight of authority, we are led to follow those precedents which have been marked out in this particular field by the wisdom of the high courts in so many of our sister states. Those who are carrying out the plan adopted for our free school system, and especially those who are devoting time and attention, without compensation, to making the same effective, are entitled to know whether or not they are to be held liable in actions for negligence, or whether they are protected in performing governmental functions of the state in the same manner that the state itself would be protected where they act in good faith, without malice, without compensation,

and solely for the public good. And after a most careful consideration, we are led to hold that they should be so protected in the absence of a positive statute of our lawmaking power indicating a wish to the contrary.

And since we have scanned the entire record, it may not be amiss to say although the fact has not in any wise influenced our finding, that, with reference to the various allegations of negligence, the supporting proof is so meager and inconclusive, it leaves us in some doubt as to whether there is sufficient evidence of any neglect for any purpose whatsoever.

The motion of the defendants and each of them for an instructed verdict against the plaintiff should have been sustained, and the action of the court in overruling such motions was error. For the reasons herein given, the judgment of the trial court is hereby vacated and set aside, and the cause is reversed and remanded with directions to the trial court to dismiss the action.

TEEHEE, REID, LEACH, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.